George Harvey MEEK, Appellant,

v.

The STATE of Texas, Appellee.

No. 428–88.

Court of Criminal Appeals of Texas, En Banc.

May 23, 1990.

---

Michael L. Aaronson, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

On Sunday morning, April 6, 1986, firefighters rushed to the scene of a burning house at 1304 Wedgewood in El Paso. The house's owner, Carol DeWees Meek, ("DeWees") later pleaded guilty to arson in connection with the fire. Appellant, her estranged husband at the time of the fire, was convicted as a party to the offense and sentenced to seven years' confinement in the Texas Department of Corrections. His appeal to the Court of Appeals in El Paso resulted in a reversal of his conviction. *Meek v. State,* 747 S.W.2d 30 (Tex.App.—El Paso 1988). The State then petitioned this Court for discretionary review. After reviewing four closely related grounds for review, we reverse the judgment of the Court of Appeals and affirm appellant's original conviction.[1]

The contested issues on appeal revolve around the admissibility of two statements appellant gave on April 8, 1986 at the office of El Paso Fire Department Inspector Zubia. Two versions of the events surrounding the taking of the statements appear in the record.

Inspector Hector Zubia testified that the principal suspect in the arson investigation was the owner of the property, DeWees, who was also the beneficiary of the house's fire insurance policy. (The house had been acquired before DeWees' marriage to appellant and hence he possessed no proprietary interest in it. See V.T.C.A., Family Code Sec. 5.01). DeWees was the house's sole resident on the date of the fire, and the only person witnesses (other than she herself) were able to place at the scene on the morning of the fire. When Zubia questioned DeWees about the fire on Sunday evening, he found her reactions very suspicious. Because he considered her a suspect, he gave her Miranda warnings before taking her statement.

In that statement, DeWees said that appellant had come to her residence on the morning of the fire and had threatened to "torch" her house. (She later admitted on the stand that she had lied to Zubia about

---

1. The State's grounds for review were essentially as follows:

(1) Is an individual in custody under *Miranda v. Arizona* [under the circumstances of this case as described in Inspector Zubia's testimony]?

(2) Was appellant in custody (for purposes of *Miranda v. Arizona*) at the time he gave his statements where appellant was not arrested until more than a month after he gave the statements?

(3) Were appellant's statements, given under the above circumstances, admissible in evidence at his trial?

(4) Did the Court of Appeals err in giving credence to appellant's testimony [when the trial court disbelieved it]?

We find ground (2) to be a subset of ground (1), and ground (3) to be a less specific restatement of ground (1). Ground (4) presents a subissue which must be resolved in order to address ground (1). We shall therefore address only the first ground, but in so doing we shall adequately answer the State's entire petition.

this). Zubia testified that DeWees' implication of appellant made little impression on him at the time; he claimed that an interview with appellant had been sought for the sole purpose of gathering more evidence against DeWees, and not that appellant was under investigation.

After leaving his card with a note at appellant's residence on Sunday night, Zubia and his assistant paid appellant a second visit on Monday. Appellant told them that he was currently unavailable because he was working for the Drug Enforcement Administration and had important business to attend to. The fire investigators proceeded to the DEA office where they inquired about appellant; the DEA personnel knew nothing about him. Appellant later admitted on the stand that his DEA story was "a little bit incorrect."

The next day, April 8, appellant appeared voluntarily at Zubia's office. From this point on, the testimony concerning events diverges.

Zubia claimed that appellant was very cooperative during the entire interview. He testified that no threats, promises, or coercion were used to obtain appellant's statements, and that appellant was never deprived of his freedom in any way during his time at the fire department. According to Zubia, appellant was free to leave at any time and could have done so on one occasion when he left the building and went to his automobile to retrieve some papers.

Appellant, on the other hand, testified that he went to Fire Marshall Jackson's office upon arrival at the fire station. Appellant maintains that Zubia handcuffed him, told him he was under arrest (without giving him Miranda warnings), generally intimidated him, and told him that he would be allowed to go if he told Zubia what Zubia wanted to hear. According to appellant's testimony, this intimidation in secret continued for a few hours, after which time appellant's handcuffs were removed and he was taken before an office secretary who recorded his statements. Appellant concedes that he was allowed to leave the station unhindered and that he suffered no

formal arrest until May 16, more than a month after his statements were taken.

In the statements, appellant explicitly claims that he did not set the fire, make arrangements for it, or pay anyone to do it. He states his belief that his wife started the fire. However, he also tells of numerous instances when he goaded his wife into setting the fire, pushed her into taking out additional insurance coverage on the house, instructed her how to burn the house, inquired whether acquaintances would be interested in burning the house for her, or purchased supplies which could be used in burning the house. He even describes how he cooked a large quantity of sausage, piled all the sausage near the stove with the cooking grease and instructed his wife to use this rather unique incendiary device in her upcoming arson! These admissions implicating appellant as a party to the crime are couched within a long, disjointed, rambling statement that the fire department secretary testified was possibly the longest she had ever taken.

■ At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Cannon v. State*, 691 S.W.2d 664, 673 (Tex.Cr.App.1985), cert. den., *Cannon v. Texas*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Green v. State*, 615 S.W.2d 700, 707 (Tex.Cr.App. 1981). The judge may believe or disbelieve all or any part of a witness's testimony. *Cannon*, 691 S.W.2d at 673. His findings should not be disturbed absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Cr.App.1987), cert. den., *Dancy v. Texas*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

In this case, the trial court implicitly made a finding that appellant was neither handcuffed nor intimidated when he gave his statements to Zubia. At the end of the suppression hearing, the court stated:

All right, gentlemen. You can do a brief if you'd like. I think however, since—the Court is going to rule that this is not a custodial interrogation, that any statement the defendant may have made was probably voluntary.

Had the court believed appellant's testimony concerning the handcuffs and intimidation, it could not have found that appellant was not in custody at the fire station.[2] Since Zubia's testimony supports the trial court's finding, the finding should not be disturbed on appeal. Therefore we, like the Court of Appeals, are bound to accept Zubia's version of events since it is definitely supported by the record.

■ We must now review the Court of Appeals' holding that custodial interrogation existed under the facts found by the trial court. The Court of Appeals held that appellant was in custody at least after he began making incriminating remarks because "it defies belief that, when the statement of DeWees regarding the appellant's threat and the above mentioned statement of the appellant are taken in conjunction, the focus of the investigation had not centered upon the Appellant ..." *Meek,* 747 S.W.2d at 31. Even were we to accept this very debatable conclusion of the Court of Appeals, we would still have to conclude that the court applied the wrong test for determining the presence of custody. Being the focus of a criminal investigation does not equate to custody. *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

The correct test is much broader and more complex. Although we have used several approaches to determine whether "custody" exists, we have always considered multiple factors. One approach merges the idea of "focus" with the idea of "whether a reasonable person would believe that his freedom was being deprived in a significant way." *Shiflet v. State,* 732 S.W.2d 622, 624 (Tex.Cr.App.1985). Another approach cites four factors as relevant to the inquiry: probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant." *Wicker v. State,* 740 S.W.2d

779, 786 (Tex.Cr.App.1987), cert. den., *Wicker v. Texas,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988); *Payne v. State,* 579 S.W.2d 932, 933 (Tex.Cr.App. 1979). By making focus solely determinative, the Court of Appeals erred since it failed to consider the other relevant factors. We must now determine whether "custody" existed considering *all* the relevant circumstances.

The facts of this case are extremely similar to those in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The issue in *Mathiason* was whether the defendant was in custody when he made an incriminating confession without having first been warned about his Miranda rights. Even though the interview took place in a State policeman's office behind closed doors at the invitation of the policeman, our nation's highest court held that defendant had not been in custody because he came to the police offices voluntarily and was allowed to leave unmolested, having been told that his case would be referred to the district attorney for evaluation. *Id.* 97 S.Ct. at 713–714.

Several State cases are also on point: *Shiflet v. State,* 732 S.W.2d 622 (Tex.Cr. App.1985); *Wicker v. State,* 740 S.W.2d 779 (Tex.Cr.App.1987); *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971); *Dancy v. State,* 728 S.W.2d 772 (Tex.Cr.App.1987); *see also Livingston v. State,* 739 S.W.2d 311 (Tex.Cr.App.1987), cert. den., *Livingston v. Texas,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Arredondo v. State,* 694 S.W.2d 378 (Tex.App.—Corpus Christi, 1985).

In *Shiflet,* this Court held that when a person voluntarily accompanies officers to a location, and he knows or should know that he is a suspect in the crime the officers are investigating, the person is not in custody. Shiflet accompanied officers voluntarily to Austin for a polygraph examina-

**2.** The Supreme Court, in *Miranda, supra,* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." On another occasion, the Supreme Court described the deprivation of freedom required for "custody" to exist as "the restraint on freedom of movement of the degree associated with a formal arrest." *Minnesota v. Murphy,* 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409, 421 (1984). A person handcuffed by a law enforcement official in the official's office would surely meet these standards.

tion in connection with a homicide investigation. He was not in custody even after he began to make oral admissions at the polygraph examiner's office. *Shiflet,* 732 S.W.2d at 631.

*Wicker* involved a sex offender who voluntarily went to a Texas Department of Human Services social worker and confessed to having sexual intercourse with his daughter. When the confession was later used against him, Wicker objected that the lack of prior Miranda warnings rendered his confession inadmissible. We held that *Mathiason* controlled and that there had been no custodial interrogation because there was nothing to suggest that Wicker's freedom of action was in any way hampered before, during, or after giving his statement; he arrived and departed a free man, under no form of restraint or arrest (other than his probation for a previous offense.) *Wicker,* 740 S.W.2d at 786–787.

In *Brown,* the defendant and his uncle voluntarily came to the District Attorney's office to make a statement in a homicide investigation; they voluntarily left afterwards. We held that the investigation had not yet focused on defendant and that since the D.A. and police were only making a general investigation into an unsolved crime and were checking on all sources of information about the deaths involved, there was no custody for Miranda purposes when defendant's statements were made. *Brown,* 475 S.W.2d at 951. *Dancy* is very similar to the *Shiflet* case cited above. Defendant voluntarily accompanied officers to the police station after they recovered his letter jacket and comb from the scene of a murder under investigation. There was ample evidence to support a finding that Dancy was not arrested, but freely went to the station in hopes of recovering his property. *Dancy,* 728 S.W.2d at 777. We held that even after he began giving the police physical evidence for their investigation at the station, he was still not in custody. *Dancy,* 728 S.W.2d at 779. *Dancy* and the cases cited previously mandate our holding today that appellant was not in custody when he made his two statements at the fire station.

Appellant cites two inapposite cases in support of his contention that he was in custody at the fire station. In *McCrory v. State,* 643 S.W.2d 725 (Tex.Cr.App.1982), we held that defendant was in custody after he voluntarily accompanied officers to a polygraph examiner's office and confessed to committing the murder, while officers watched from behind a one way mirror. That case is distinguished from this one in that McCrory was never allowed to leave the officers' presence after his confession, whereas appellant remained free for over five weeks after his confession. Also, McCrory made a straightforward declaration "I did it" which the officers recognized immediately as a confession. Appellant, on the other hand, only made statements which could possibly make him guilty as a party, a much more subtle confession to recognize (especially for a non-lawyer), and his possibly incriminating statements were embedded in a distracting, rambling narrative. Appellant's other case, *Ruth v. State,* 645 S.W.2d 432 (Tex.Cr.App.1979), also involved a defendant who made a statement to the police and was immediately arrested, and therein lies its distinction from this case.

■ Examining all the relevant factors, we note that Inspector Zubia's testimony reflects the fact that DeWees was the sole focus of his investigation at the time of appellant's interviews. We also note that the trial court disbelieved appellant's story about being handcuffed and intimidated, and believed Zubia's account that no compulsion of any kind was used on appellant. The facts as found by the trial court indicate that appellant came to the fire station of his own free will at a time of his own choosing, was apparently allowed to step outside the building and go unaccompanied to his car during the interviews, was allowed to leave unhindered after the statements were taken, and was not formally arrested or detained in any way until five weeks later. These conditions and the precedent cited above mandate a holding that appellant was not in custody during his visit to Zubia's office; hence it was not error for his statements to be used against him even though Miranda warnings were

not first administered before the statements were taken.

The State's first ground for review is sustained.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is hereby affirmed.

TEAGUE, J., concurs in the result.