Jessie Lee **DARICEK,** Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–93–092–CR.

Court of Appeals of Texas, Austin.

May 4, 1994.

---

Ray Bass, Austin, for appellant.

David M. Williams, County Atty., San Saba, for appellee.

Before POWERS, KIDD and DAVIS *, JJ.

TOM G. DAVIS, Justice (Retired).

 After finding appellant guilty of the misdemeanor offense of driving while intoxicated, Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(2)(B) (West Supp.1994), the jury assessed punishment at confinement for thirty days and a fine of five hundred dollars, both of which were probated for one year. In his first point of error, appellant contends the evidence is insufficient to support the conviction. In points of error two and three, appellant asserts that the trial court erred in its instructions to the jury defining alcohol concentration. We overrule appellant's points of error and affirm the judgment of the trial court.

The Court of Criminal Appeals has stated that "under Article 6701*l*–1 there are really two types of DWI offenses." *State v. Carter*, 810 S.W.2d 197, 200 (Tex.Crim.App.1991). The *Carter* court articulated the difference as follows:

> First, under Article 6701*l*–1(a)(2)(A), there is a "loss of faculties" offense. This "loss of faculties" offense may be established by proving the defendant drove or operated a motor vehicle in a public place while not having the normal use of his mental faculties, or while not having the normal use of his physical faculties, be-

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex.Gov't Code Ann. § 74.003(b) (West 1988).

cause of the introduction into his body of (1) alcohol; (2) a controlled substance; (3) a drug; or (4) a combination of two or more of those substances. Second, under Article 6701*l*–1(a)(2)(B), there is a *per se* offense. This *per se* offense may be established by proving the defendant drove or operated a motor vehicle in a public place while having an alcohol concentration of 0.10 or more in his blood, breath, or urine. *Carter,* 810 S.W.2d at 200. (citations omitted). In the instant cause, the information alleged that appellant operated a motor vehicle in a public place, "while intoxicated, defendant's blood having an alcohol concentration of at least 0.10."

D.P.S. Trooper Stephen Boyd was on routine patrol on State Highway 16 in San Saba County at approximately 6:30 p.m. on February 5, 1992, when he observed a car approaching at a high rate of speed. After a radar check showed the vehicle's speed at 103 m.p.h., Boyd activated the patrol car's lights and turned in pursuit of the vehicle. When the vehicle came to a stop, Boyd identified appellant as the driver. Boyd observed that appellant's eyes were "very bloodshot"; he had a strong odor of alcohol on his breath and a slight slur in his speech. Boyd decided to give field sobriety tests to appellant because of "alcohol on his breath and seeing his demeanor." Appellant's performance on all six points of the horizontal gaze nystagmus test were unsatisfactory. Boyd stated that he formed the opinion that appellant was intoxicated because of his performance on the foregoing test and three additional field-sobriety tests. Appellant was taken to the San Saba County Sheriff's office and given breath tests with an intoxilyzer, which showed that appellant's alcohol concentration was 0.128 at 7:32 p.m. and 0.112 at 7:36 p.m.

Appellant testified that he drank three beers and ate two sandwiches "around 5:00 p.m." Elmer Weber, technical supervisor of the breath testing program for D.P.S., testified that the alcohol in one beer would elevate a person's blood alcohol to about 0.02. Weber stated that if a person drank three beers, his blood alcohol would never reach 0.06 because time required for alcohol to be absorbed in the body allows some alcohol to be passed out and metabolized by the body. Weber opined that a male weighing two hundred pounds, who consumed three beers and two sandwiches would have an alcohol concentration an hour and a half later of no more than 0.03." Weber related that the results of a breath test and a blood test "match up," having "only very slight difference, a few thousandth of a percent, one or two."

Appellant urges that the evidence is insufficient to support his conviction because the State failed to relate the results of his breath test at 7:35 p.m. to his alcohol concentration at 6:30 p.m. when he was driving. Appellant directs our attention to Weber's testimony that he did not know what appellant's alcohol concentration would have been at 6:30 p.m.

■ The validity of the test, the reliability of the machine and the qualifications of the operator are not challenged. In addition, the "jury must still be convinced beyond a reasonable doubt that an *inference* can be made from the results of the chemical test that the defendant had a 0.10 alcohol concentration in his body *at the time of the offense." Forte v. State,* 707 S.W.2d 89, 95 (Tex.Crim.App. 1986). In *McCafferty v. State,* 748 S.W.2d 489 (Tex.App.—Houston [1st Dist.] 1988, no pet), cited by appellant, the defendant was the driver of a vehicle that was in a single car accident around 2:30 a.m. The officer arrived at the scene at 3:50 a.m. and gave the defendant field sobriety tests which she failed. The defendant was taken to the police station and given a breath test at 4:45 a.m. that showed an alcohol concentration of 0.18. In holding the evidence insufficient to support the conviction, the court found that the State did not exclude the hypothesis that the defendant had been drinking between the time she last drove the car at 2:30 a.m. and the arrival of the officer at 3:50 a.m. *McCafferty,* 748 S.W.2d at 491. The court also noted that the State's expert witness did not explain absorption and metabolization rates of intoxication, or in any way connect the breath test results at 4:45 a.m. to the defendant's condition when driving at 2:30 a.m. *McCafferty,* 748 S.W.2d at 491.

In reviewing the sufficiency of the evidence to support a conviction, we must determine whether, viewing the evidence in the light most favorable to the conviction, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Casillas v. State,* 733 S.W.2d 158, 160 (Tex.Crim.App.1986), *appeal dism'd,* 484 U.S. 918, 108 S.Ct. 277, 98 L.Ed.2d 238 (1987). Because this cause was tried after the effective date of *Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim.App.1991), we do not utilize the *McCafferty* construct of excluding every reasonable hypothesis in determining the sufficiency of the evidence. We hold that the proof needed to show the "loss of faculties" offense and the "per se offense" are not mutually exclusive. Clearly, a test showing that blood had a 0.10 alcohol concentration is probative evidence of a loss of faculties. Conversely, evidence of his failure to pass field sobriety tests immediately after driving his vehicle tends to make it more probable that the failed blood or breath test taken an hour later accurately reflect the driver's condition at the time of the offense. *See* Tex.R.Crim.Evid. 401.

Here no time elapsed between the appellant's operation of the vehicle and the officer's opportunity to observe his demeanor and administer field sobriety tests. The results of the breath test, the expert testimony of absorption and metabolization rates of intoxication in a person who drinks three beers and eats two sandwiches, and the officer's opinion that appellant was intoxicated based on field sobriety tests, provide cumulative evidence sufficient to enable the jury to relate the results of the breath test to appellant's alcohol concentration at the time he was stopped. We hold that any rational trier of fact could have inferred beyond a reasonable doubt that appellant had a 0.10 alcohol concentration in his body at the time of the offense. Appellant's first point of error is overruled.

In his second point of error, appellant asserts that the trial court erred by including its in charge, over appellant's timely objection, an instruction that "alcohol concentration means the number of grams per 210 liters of breath," when the information charged that appellant's blood had an alcohol concentration of at least 0.10. In its charge, the court included the statutory definition that "alcohol concentration means: (A) the number of grams of alcohol per 100 milliliters of blood; (B) the number of grams of alcohol per 210 liters of breath; or (C) the number of grams of alcohol per 67 milliliters of urine." *See* Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(1)(A)(B)(C). Appellant contends that the instruction that alcohol concentration means the number of grams of alcohol per 210 liters of breath authorized a conviction on a theory not alleged in the indictment.

We have been unable to find any authority holding that it is necessary to specify blood, breath or urine when the indictment or information asserts an alcohol concentration of 0.10. However, "where the unnecessary matter is descriptive of that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated." *Wray v. State,* 711 S.W.2d 631, 633 (Tex.Crim.App.1986). We hold the court erred in failing to sustain appellant's objection to the charge.

The *Almanza* test has become the standard by which Texas appellate courts determine whether an error in the court's charge requires reversal. *See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). Applicable to the instant cause, the *Almanza* court held:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

*Almanza,* 686 S.W.2d at 171.

Appellant urges that he was harmed by Weber's testimony that the results of a breath test and the results of a blood test "match up" based on breath testing instruments that were calibrated in a blood-alcohol

774

to breath-alcohol partition ratio of 2100 to 1. Under cross-examination, Weber stated that he had seen a study that suggested that the ratio could be as low as 1 to 1,000. Based on defense counsel's hypothetical example of a partition ratio of 1 to 1050 instead of 1 to 2100 with a breath test of 0.128, Webster testified that the blood alcohol would only be about .06 or .07. Weber characterized the partition ratio used in the hypothetical example as "abnormal." Weber related that the 1 to 2100 ratio was designed for a breath test to reflect the alcohol in the blood and that it had been used for this purpose in Texas since 1968; "we weren't by any means the first state" to use this test. Weber stated that many thousands of subjects were given the breath test using the 1 to 2100 ratio in correlating the results with a blood test. Weber testified that he had conducted tests of comparisons between breath-alcohol concentration level versus blood test concentration levels using the 1 to 2100 ratio and found "[I]t's occasionally right exactly the same or a little bit higher or a little bit lower." It's just slightly a few thousandths—a thousandth or two above or below."

In the instant cause, expert testimony reflected the reliability of the method used to correlate breath tests with a blood test based on thousands of tests and used in this state since 1968. Our review of the evidence fails to reveal any abnormal condition that was shown to place appellant within the abnormal exception used in defense counsel's hypothetical example. We hold that the error in the court's charge has not resulted in "some harm" to appellant. Appellant's second point of error is overruled.

In his third point of error, appellant asserts that the trial court erred by suggesting to the jury in its instruction that a breath test might reflect a person's blood-alcohol level. Our disposition of appellant's second point of error disposes of this contention. Appellant's third point of error is overruled.

The judgment is affirmed.