Bonnie Alice OWEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–94–322–CR.

Court of Appeals of Texas,
Waco.

Aug. 23, 1995.

**435**

Steve Robertson, Robertson & Robertson, Clifton, for appellant.

Andy J. McMullen, Dist. Atty., Ben L. Stool, Asst. Dist. Atty., Hamilton, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

### OPINION

VANCE, Justice.

Bonnie Alice Owen was convicted in a jury trial of involuntary manslaughter arising out of an automobile accident in which a six-year-old boy riding a bicycle was killed. The jury assessed five years in prison and found that Owen had used a deadly weapon. She brings six points of error, two of which she concedes have been decided against her. Finding the remaining points without merit, we will affirm the conviction.

### FACTS

Owen was driving on Morgan Street in Meridian at about 5:30 p.m. when her vehicle hit the boy and his bicycle. During the investigation, Officer Mike Mabry of the Department of Public Safety talked to Owen at the scene. The conversation was preserved by a video camera that was recording events in front of Mabry's vehicle. Owen was later given Miranda warnings[1] and an intoxilyzer test at the Bosque County jail. Part of the recorded conversation and the results of the test were admitted into evidence.

1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### ADMISSIBILITY OF OWEN'S STATEMENTS

Three of Owen's points relate to the admission of the videotape of her conversation with Mabry. Mabry testified that he talked to Owen in his vehicle. He said that she was not in custody at the time and was free to go. The videotape never shows Owen or Mabry during their conversation, so only the audio portion, which was captured by a wireless microphone Mabry was wearing, is relevant. Their conversation started at 6:04 p.m.[2]

Mabry first asked, "Who was driving?" When Owen responded that she was, Mabry asked for her driver's license and insurance card. After she produced those items, they discussed whether her insurance was still in force. Mabry inquired whether she was alone in the car, and she told him that there was a passenger. Responding to Owen's inquiry about whether she could smoke, Mabry said he would rather she did not. He asked her to put out the cigarette and close the door and said he would start the air conditioning. He asked if her driver's license showed her correct address. She said it did. When he asked where she was coming from before the accident, she said, "picking flowers." To his inquiry whether her car was a two-door or four-door, she replied that it was a four-door. After this exchange, Mabry asked, "Well, what happened?" Owen complains about the admission the portion of the videotaped conversation that followed:

A. I was just coming down here, and I saw him, and I was braking, and I went this way and he was right there. I was—I was just coming off this hill right here.

Q. Are you alright?

A. No.

Q. I mean you're not hurt? I know you're probably upset, but are—you're not hurt—

A. No.

Q. —are you?

A. No.

Q. Okay. I didn't ask—

2. The videotape time indicator shows 5:04 p.m., but Mabry explained that it had not yet been adjusted for daylight savings time.

In admitting the statements into evidence through the videotape, the court found:

- Owen was present in Mabry's vehicle;
- the officer believed that she was the driver of a vehicle that had just struck and injured a child;
- Owen's freedom of movement was not restrained "to the degree associated with a formal arrest";
- Mabry's question, "Well, what happened?", was not an interrogation; and
- the oral statements that Owen made during the interview were not "a written accident report."

The court concluded that the electronically recorded statement was freely and voluntarily made without any compulsion or persuasion and that it was admissible at the trial. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979).

■ Owen initially says that the findings are incomplete, are in most instances conclusions of law rather than findings of fact, and that the findings made do not support the conclusion that the statements were admissible. Citing *Nichols v. State*, 810 S.W.2d 829 (Tex.App.—Dallas), *pet. ref'd*, 815 S.W.2d 732 (Tex.Crim.App.1991), she says that the findings are wholly inadequate and that the judgment should be reversed on that ground alone. Having reviewed the court's findings in light of the record, we believe that they are "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the [defendant's] confession, including the resolution of the disputed facts upon which the voluntariness may depend." *See Wicker v. State*, 740 S.W.2d 779, 783 (Tex.Crim.App. 1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988). We overrule supplemental point one.

■ Section five of article 38.22 provides in part: "Nothing in this article precludes the admission of a statement made by the accused ... that does not stem from custodial interrogation...." TEX.CODE CRIM.PROC. ANN. art. 38.22, § 5 (Vernon Supp.1995). An oral admission which does not stem from custodial interrogation and which is given freely, voluntarily, and without compulsion is admissible. *Shiflet v. State*, 732 S.W.2d 622,

623 (Tex.Crim.App.1985). It is undisputed that Owen was not warned under *Miranda* prior to the videotaped conversation. Her remaining points attacking the admissibility of her statements turn on the question of whether those statements resulted from custodial interrogation. We will focus on the court's finding that Owen was not under arrest when Mabry asked, "Well, what happened?" If the court was correct, then it does not matter whether the question was an "interrogation."

■ The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *Griffin v. State*, 765 S.W.2d 422, 429 (Tex.Crim.App.1989). In a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given to their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). He may choose to believe any or all of the witnesses' testimony. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App. 1990). The findings of the trial court should not be disturbed absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991); *Meek*, 790 S.W.2d at 620. If the findings are supported by the record, the only question on appeal is whether the court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543.

Various approaches have been used to determine whether a person is in "custody." *Meek*, 790 S.W.2d at 621. One approach centers on "whether a reasonable person would believe that his freedom was being deprived in a significant way." *Id.* (citing *Shiflet*, 732 S.W.2d at 624). Another approach relies on four relevant factors: (1) probable cause to arrest, (2) subjective intent of the police, (3) focus of the investigation, and (4) subjective belief of the defendant. *Id.*

■ The court, as the exclusive trier of fact and judge of the credibility of witnesses, determined that the statements were not made while Owen was under arrest and thus were not the result of custodial interrogation. *See Romero*, 800 S.W.2d at 543. In light of

the factors used to determine whether one is in custody, we hold that the court did not abuse its discretion when it applied the law to the facts to determine that Owen was not in custody when she made the statements. *See id.; Meek,* 790 S.W.2d at 621. We overrule point one and supplemental point two.

## CHARGE ERROR

■ There are two types of DWI offenses: a "loss of faculties" offense and a "per se" offense. *Daricek v. State,* 875 S.W.2d 770, 771–72 (Tex.App.—Austin 1994, pet. ref'd) (citing *State v. Carter,* 810 S.W.2d 197, 200 (Tex.Crim.App.1991)). The court charged the jury both ways, *i.e.,* that intoxication "means (1) not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into the body, or (2) having an alcohol concentration of 0.10 or more." *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 662, § 5, 1993 Tex.Gen.Laws 2458, *repealed by* Act of May 29, 1993, 73rd Leg.R.S., ch. 900, § 1.15, 1993 Tex.Gen.Laws 3704 (current version at TEX.PENAL CODE ANN. § 49.01 (Vernon 1994)).

Owen's second point asserts that the court erred when it overruled her objection to the second prong of the definition. Under this point she asserts (1) there was no evidence about the statutory definitions of "alcohol concentration" to justify including the second prong in the charge and (2) there was no testimony relating the intoxilyzer's test results, showing Owen's level of alcohol concentration at the time of the test, to her level of alcohol concentration at the time of the accident that had occurred over an hour earlier. She also notes that the court did not include the statutory definitions of "alcohol concentration" in the charge.[3]

The State introduced the printed "Police Officer DWI Statutory Warning," signed by Mabry, which states:

You will be requested to submit to the taking of a specimen of your Breath/~~Blood~~ (strike one) for the purpose of analysis to determine the *alcohol concentration* or the presence of a controlled substance or drug in your body.... If you submit a specimen that discloses an *alcohol concentration* level of .07 or more, but less than 0.10 and you are under the age of 21, you will be summoned to appear for an administrative hearing.... I now request that you submit to the taking of a specimen of your Breath/~~Blood~~ (strike one) for the purpose of analysis to determine the *alcohol concentration* or the presence of a controlled substance or drug in your body.

(Emphasis added). The State also offered into evidence the printed results of the intoxilyzer test that was administered to Owen.[4] The report, admitted over her objection, shows:

| ANALYSIS | ALC CONC | TIME |
|---|---|---|
| AIR BLANK | 0.000 | 18:34CDT |
| SUBJECT | 0.164 | 18:36CDT |
| AIR BLANK | 0.000 | 18:36CDT |
| REFERENCE | 0.103 | 18:36CDT |
| AIR BLANK | 0.000 | 18:37CDT |
| SUBJECT | 0.169 | 18:39CDT |
| AIR BLANK | 0.000 | 18:39CDT |

Owen does not complain on appeal about the admissibility of the intoxilyzer results. She also has not complained about the sufficiency of the evidence to support a conviction under the "loss of faculties" charge. Rather, she says the reported results of the intoxilyzer test are not evidence of alcohol concentration at the time of the accident.[5] She urges that, because no other evidence was offered by the State to relate the test results to her

---

3. Although not specifically before us, we note that the court in *Daricek* held that it was error to deny a challenge to a charge including the entire statutory definition of "alcohol concentration," when the basis of the challenge was that it authorized a conviction on a theory not alleged in the charging instrument. *Daricek v. State,* 875 S.W.2d 770, 773 (Tex.App.—Austin 1994, pet. ref'd).

4. Bob Browder, a Technical Supervisor for the Department of Public Safety who testified about the integrity of the intoxilyzer, testified that, to have a valid breath test, two separate breath

samples must be introduced into the intoxilyzer at two different times and that these samples must not differ by more than 0.020.

5. Mabry testified that he smelled an alcoholic beverage while Owen was sitting in his car. He also testified that, in his opinion, she was intoxicated. Browder testified over objection that a person whose breath-alcohol concentration level is over 0.10 is impaired. Neither witness attempted to relate the test results to Owen's condition an hour earlier.

condition at the time of the accident, the court should not have included the second prong in its definition of intoxication. Act of May 25, 1993, 73rd Leg., R.S., ch. 662, § 5, 1993 Tex.Gen.Laws 2458 (current version at TEX.PENAL CODE ANN. § 49.01).

The State points to the testimony of Dr. Nizam Peerwani, the Chief Medical Examiner for Tarrant, Parker, and Denton counties, who was called to testify about the results of the autopsy he performed on the victim of the accident. During cross-examination, Dr. Peerwani was asked general questions about the effects of alcohol on a person's mental and physical faculties. Dr. Peerwani did not, however, express an opinion about Owen's level of alcohol concentration at the time of the accident.

Owen cites *McCafferty v. State*, 748 S.W.2d 489 (Tex.App.—Houston [1st Dist.] 1988, no pet.). The question in *McCafferty*, however, was whether sufficient evidence supported the conviction, and the court used the now-discarded "reasonable hypothesis" test in setting the conviction aside. *Id.* at 491–92. The opinion notes that the state did not ask a witness whether the defendant had anything to drink while waiting for the wrecker and that its expert witness did not explain absorption and metabolization rates or "in any way connect the breath tests results at 4:45 a.m. to [the defendant's] condition when driving at 2:30 a.m." *Id.* at 491.

The State cites *Daricek*, a DWI prosecution in which the state alleged only a per-se offense. *See Daricek*, 875 S.W.2d at 772. The opinion states that (1) Daricek was stopped at approximately 6:30 p.m. and was given the intoxilyzer test at 7:32 and 7:36 p.m.; (2) the test results were 0.128 and 0.112; (3) Daricek testified that he drank two beers about 5:00 p.m.; (4) the arresting officer testified about the effects of alcohol on the body, but said he did not know what Daricek's alcohol concentration would have been at 6:30 p.m.; and (5) the officer also testified that he administered field sobriety tests which Daricek had failed. *Id.* In concluding that the evidence was sufficient to support the conviction of the per-se offense, the court said:

We hold that the proof needed to show the "loss of faculties" offense and the "per se offense" are not mutually exclusive. Clearly, a test showing that blood had a 0.10 alcohol concentration is probative evidence of a loss of faculties. Conversely, evidence of his failure to pass field sobriety tests immediately after driving his vehicle tends to make it more probable that the failed blood or breath test taken an hour later accurately reflect the driver's condition at the time of the offense. *See* TEX. R.CRIM.EVID. 401.

Here no time elapsed between the appellant's operation of the vehicle and the officer's opportunity to observe his demeanor and administer field sobriety tests. The results of the breath test, the expert testimony of absorption and metabolization rates of intoxication in a person who drinks three beers and eats two sandwiches, and the officer's opinion that appellant was intoxicated based on field sobriety tests, provide cumulative evidence sufficient to enable the jury to relate the results of the breath test to appellant's alcohol concentration at the time he was stopped. We hold that any rational trier of fact could have inferred beyond a reasonable doubt that appellant had a 0.10 alcohol concentration in his body at the time of the offense.

*Id.* at 773. Owen points to the absence of other evidence of the type discussed by the Austin court in *Daricek* relating the test results to her condition at the time of the accident.

Finally, the State cites *Forte v. State*, where the Court of Criminal Appeals was faced with a claim that the 1983 amendment to the DWI statute defining the per-se offense created an unconstitutional irrebuttable presumption of intoxication. *See Forte v. State*, 707 S.W.2d 89, 93 (Tex.Crim.App. 1986). The court found the legislature had decided to reject the former presumption of intoxication in favor of making an alcohol concentration of 0.10 or more an element of the offense. *Id.* at 94. The court said:

To prove the element of intoxication in a prosecution for the offense of driving while intoxicated, the State must offer proof beyond a reasonable doubt as to that ele-

ment. To be sure, if the State relies upon the 0.10% definition of intoxication, then such proof will normally appear in the form of a chemical test showing the alcohol concentration in a defendant's body *near the time of the offense.* However, a conviction will not necessarily follow from the offer of such a test. First, the trier of fact must still be convinced beyond a reasonable doubt that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath, blood or urine. Second, the jury must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a 0.10% alcohol concentration in his body *at the time of the offense.*

Nothing prevents a defendant from challenging the validity of the test itself by attacking the reliability of the machine or the qualifications of the operator. [Citation and footnotes omitted.] Nor does anything prevent a defendant from arguing that his alcohol concentration increased from the time of arrest to the time of testing. In no way does Article 6701*l*–1, supra, encourage a jury to ignore such defensive evidence on the issue of intoxication in favor of a presumption, whether mandatory or permissive.

*Id.* at 94–95 (emphasis in original).

■ The legislature has mandated the admission of intoxilyzer results. Tex.Rev. Civ.Stat.Ann. art. 6701*l*–5, § 3(a) (Vernon Supp.1995). In doing so, it was undoubtedly mindful that no regulatory scheme establishing policies and procedures for the use of machines for breath testing could assure that the time of the tests would coincide with the time of the offense being investigated. Indeed, some delay is built into the process. In a given case, as the time-gap increases between the offense and the test, the probative value of the intoxilyzer test as evidence of the defendant's alcohol concentration at the time of the offense diminishes, increasing the possibility that it will be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tex.R.Crim.Evid. 403. The task of balancing those factors to determine admissi-

bility is for the trial judge, subject to review for abuse of discretion. *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim.App.1986); *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim. App. [Panel Op.] 1979). Once admitted, the results are probative evidence of the accused's condition at the time of the offense.

■ Applying the general reasoning of *Forte* to the facts of this case, we hold that the jury could have, without other evidence, inferred from the results of the intoxilyzer tests given just over an hour later that Owen had an alcohol concentration of 0.10 or more at the time of the accident. *See Forte,* 707 S.W.2d at 94–95. Thus, the court correctly included the second prong, the per-se element, in its definition of intoxication. We overrule point two.

**DEADLY WEAPON FINDING**

■ In two points, Owen complains about the jury's finding that she used a deadly weapon, *i.e.,* the automobile, in the commission of the offense. After her brief was filed, the Court of Criminal Appeals decided *Tyra v. State,* 897 S.W.2d 796 (Tex.Crim.App. 1995), which upheld such a finding in an involuntary manslaughter conviction arising out of the operation of a motor vehicle while intoxicated. Owen candidly admitted at oral argument that *Tyra* controls both points and was decided adversely to her position. *See id.* Consequently, we overrule points three and four.

**CONCLUSION**

Having overruled all of Owen's points of error, we affirm the judgment.