Dennis Wayne **EVANS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–97–00944–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 6, 1999.

David J. Eveld, Moore, Pape & Dwyer, L.L.P., Seguin, George Scharmen, San Antonio, for Appellant.

W.C. Kirkendall, Dist. Atty., Frank Follis, Asst. Dist. Atty., Seguin, for Appellee.

## OPINION

Opinion by: PAUL W. GREEN, Justice.

A jury convicted Dennis Wayne Evans of intoxication manslaughter and intoxication assault. On appeal, Evans challenges the legal and factual sufficiency of the evidence that he drove while intoxicated. We hold the evidence is sufficient and affirm the trial court's judgment.

### Background

According to Evans's trial testimony, on August 17, 1996, he had a barbecue lunch with a couple of beers. He then went fishing on the Guadalupe River with his friend, Daren Oatman. Evans denied drinking any other alcoholic drinks until he and Oatman went to a bar about 9:00 p.m., where they met Tammy McKinney, Jesse Vincent, Kelly Carwile, Keith Rudeloff, Tim Helmke, and Tracy Parks.[1] Evans said he had four beers at the bar before the group left at 1:00 a.m. According to Evans, because his friends thought he was "more sober" than they were, they asked him to drive Parks's car with Oatman, McKinney, and Vincent as passengers. Although Evans was unfamiliar with Parks's car and the road, he agreed to drive.

Rudeloff drove the remaining friends in his pickup truck, but he decided to pull off the road several miles from the bar. Evans testified he passed the truck, looked back to see if it was following, and missed a turn in the road. Parks, who was a passenger in Rudeloff's truck, testified that she thought Evans was speeding when he passed the stopped truck.

When Parks's car left the road, it flipped over, pinning McKinney beneath it. She later died from severe head injuries. Vincent also suffered head injuries when he was thrown from the vehicle. Neither Evans nor Oatman were seriously injured.

Two Department of Public Safety (DPS) troopers arrived at the scene and noticed Evans had a "moderate odor" of alcohol. He appeared "quiet," "confused," and "in a state of shock." They administered two field sobriety tests and concluded Evans was not intoxicated. Nonetheless, they took him to the police station where, about ninety minutes after the accident, Evans's breath test registered a breath alcohol concentration of 0.153 and 0.161.

At trial, Trooper Angela Kerr opined the accident was caused by speed and inattention "due to alcohol." James Stewart, a DPS accident reconstruction expert, testified that a driver with an alcohol concentration of 0.15 would be impaired although he appeared normal. Another DPS expert, Antonio Ortiz, also opined that a driver would be impaired at 0.15 and that, in his opinion, a driver would be impaired at 0.08. While there was no direct evidence correlating Evans's breath test with

---

1. In contrast, Oatman said Evans was drinking beer while they were fishing.

his condition at the time he was driving, he did not object to the admission of the scientific evidence.[2]

 The jury was instructed that intoxication manslaughter occurs when a defendant operates a motor vehicle in a public place *while intoxicated* and, by reason of that intoxication, causes the death of another. *See* TEX. PENAL CODE ANN. § 49.08(a) (Vernon 1994). Similarly, the jury was instructed that intoxication assault occurs when a defendant operates a motor vehicle in a public place *while intoxicated* and, by reason of that intoxication, causes serious bodily injury to another. *See id.* § 49.07(a). Finally, the jury was instructed on both the "per se" and "loss of faculties" definitions of intoxication. *See id.* § 49.01(2) (defining intoxication as not having the normal use of mental or physical faculties or having an alcohol concentration of 0.10 or more).[3]

The jury found Evans guilty of intoxication manslaughter and intoxication assault and assessed concurrent sixteen-year and ten-year prison terms. Evans appealed, arguing the evidence was legally and factually insufficient to prove either definition of intoxication.

## Standard and Scope of Review

 When reviewing sufficiency of the evidence, we consider all the evidence before the jury, whether admitted rightly or wrongly. *Kelley v. State,* 968 S.W.2d 395, 399 (Tex.App.—Tyler 1998, no pet.) (citing *Thomas v. State,* 753 S.W.2d 688, 695 (Tex.Crim.App.1988)). To analyze legal sufficiency, we examine the evidence in the light most favorable to the judgment and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex. Crim.App.1984). To analyze factual sufficiency, we examine the evidence without deference to the prosecution and ask whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).

## Per Se Definition

 Evans contends the evidence is legally and factually insufficient to prove his alcohol concentration was greater than 0.10 at the time he was driving. Essentially, he argues that the breath test result of 0.15, obtained ninety minutes after the accident, was unreliable and, therefore, not evidence. "To preserve a complaint that scientific evidence is unreliable and thus, no evidence, a party must object to the evidence before trial or when the evidence is offered." *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 409 (Tex.), *cert. denied,* —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).[4] By not objecting to the scientific evidence, Evans failed to preserve his complaint for appellate review.

## Impairment Definition

 Evans also asserts the evidence is legally and factually insufficient to prove

2. When discussing McKinney's autopsy, the medical examiner said her *blood* alcohol content was 0.03 grams per deciliter. She also indicated a person eliminates alcohol, on average, at "point zero one five [grams per] deciliters [of blood] per hour." According to the State, "simple math" reveals Evans's *breath* alcohol concentration was below the legal limit.

3. Although Evans's alcohol concentration was measured from his breath, the jury was instructed that "alcohol concentration" means "the number of grams of alcohol per 100 milliliters of blood." *See* TEX. PENAL CODE ANN.

§ 49.01(1) (Vernon 1994) (setting standards to measure alcohol concentration in breath, blood, or urine). We measure the sufficiency of the evidence by the elements of the offense as defined by a "hypothetically correct jury charge." *Malik v. State,* 953 S.W.2d 234, 235 (Tex.Crim.App.1997).

4. In contrast, when an intoxilyzer result is admitted over an objection, we may discuss its probative value. *See, e.g., Mireles v. Texas Dep't of Public Safety,* 993 S.W.2d 426 (Tex. App.—San Antonio, 1999, pet. filed).

loss of mental and physical faculties. We disagree.

The evidence shows that Evans consumed alcohol with his lunch and while fishing in the afternoon. He had four more beers during a four-hour period immediately before the accident. The evidence also shows Evans was speeding while driving an unfamiliar car on an unfamiliar road. At the scene of the accident, he smelled moderately of alcohol, and he appeared quiet, confused, and shocked. Two DPS experts opined that a driver with a breath test result of 0.15 would be impaired. We hold this evidence both legally and factually sufficient to prove Evans had lost the normal use of his mental and physical faculties. *Cf. Owen v. State,* 905 S.W.2d 434, 439 (Tex.App.—Waco 1995, pet. ref'd) (holding jury could infer, without other evidence, an impermissible blood alcohol content from the later breath test results).

### Conclusion

We overrule Evans's points of error and affirm the trial court's judgment.