NO. 07-02-0157-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 18, 2002


______________________________



FRANKIE LEE NAGLE
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE COUNTY CRIMINAL COURT AT LAW NO. 4 OF HARRIS COUNTY;



 NO. 1085784; HON. JAMES E. ANDERSON, PRESIDING


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 Appellant, Frankie Lee Nagle, appeals from his misdemeanor conviction of driving
while intoxicated. In five issues, he claims that 1) the trial court erred in denying his motion
to suppress evidence seized as a result of a warrantless stop, 2) the warrantless stop was
in violation of the Fourth Amendment to the Federal Constitution, 3) the warrantless stop
was in violation of art. I, §9 of the Texas Constitution, and 4) the evidence was legally and
factually insufficient to prove his guilt. We affirm the judgment of the trial court.

 Background

 On November 2, 2001, at approximately 1:10 a.m., appellant drove onto Crown
Road from Traffic Circle in Harris County on his way home from a pub. He had arrived at
the pub after leaving work around 11:00 p.m. and consumed three to four beers before
leaving. Located on the road he traveled and near Crown Petroleum was a "security
checkpoint." The latter was erected to check cars coming into the area and was staffed
by one employee of Crown Petroleum as well as three police officers. (2) As appellant
approached the checkpoint, he was signaled to stop, according to an officer at the site. 
In response, appellant allegedly waved what appeared to be a badge and continued
through the point. Appellant denied that anyone directed him to stop and that he presented
any badge. Rather, he testified that those at the checkpoint ignored him. Nevertheless,
the road upon which he traveled was not a throughway. It apparently ended in the parking
lot of the petroleum company. Thus, he turned around and attempted to again pass the
checkpoint. At that time, a police officer stopped him, asked that he identify himself, and
asked his destination. Furthermore, as the officer spoke with appellant, he noticed that
appellant smelled of alcohol, slurred his speech, and had red eyes. These circumstances
resulted in appellant's detention until a DWI Task Force officer arrived to conduct field
sobriety tests. The Task Force officer arrived approximately an hour later and
administered the tests. Appellant performed those tests poorly, which resulted in his
arrest. 

 

Issues One, Two, and Three - Motion to Suppress


 Via his first three issues, appellant challenges the warrantless stop of his vehicle. 
He contends that the trial court erred in denying his motion to suppress because 1) the
officers lacked reasonable suspicion to temporarily detain him and 2) the checkpoint was
illegal. (3) We overrule the issues.

The Law


 The standard of review applicable to the issues is well settled. Instead of reiterating
it, we cite the parties to State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) and
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Furthermore, in State v.
Skiles, 938 S.W.2d 447 (Tex. Crim. App. 1997), the Texas Court of Criminal Appeals held
that one's failing to stop at a roadblock itself creates reasonable suspicion to stop the
individual. Id. at 454. And, given that court's interpretation of the authority it cited as
support for the proposition, the legality of the roadblock matters not. Id. 

Application


 The stop of which appellant complains is undoubtedly that encountered after turning
around in the parking lot of Crown Petroleum. This is so because he did not stop when he
first approached the checkpoint. Next, evidence of record exists upon which the trial court
could reasonably conclude that appellant failed to stop after those present, including at
least one police officer, directed him to do so. So too could it hold, given Skiles, that
appellant's failure to stop gave the officer reasonable suspicion to temporarily detain him. 
Finally, such a determination would not fall outside the zone of reasonable disagreement. 
 Accordingly, we hold that the trial court did not abuse its discretion in refusing to grant the
motion to suppress.

 Issues Four and Five - Sufficiency of the Evidence

 In his fourth and fifth issues, appellant challenges the legal and factual sufficiency
of the evidence to prove that, at the time he was operating a motor vehicle, he had lost the
normal use of his physical or mental faculties due to his ingestion of alcohol. Such were
elements of the crime which the State was obligated to prove beyond reasonable doubt. 
It did not, according to appellant. We overrule the issues.

The Law


 The standards of review applicable in determining whether the evidence was legally
and factually sufficient to sustain a conviction are well settled. We will not reiterate them
but rather refer the litigants to Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979), King v. State, 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000), and
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) for explanations of the same.

 Next, to convict one of driving while intoxicated, the State must prove that the
defendant was intoxicated while operating a motor vehicle in a public place. Tex. Pen.
Code Ann. §49.04 (a) (Vernon Supp. 2003). "Intoxicated" means "not having the normal
use of mental or physical faculties by reason of the introduction of alcohol . . . into the body
. . . ." Id. §49.01(2)(A). Additionally, there must be a concurrence of the elements of the
offense to warrant a conviction. Chaloupka v. State, 20 S.W.3d 172, 173-74 (Tex. App.--
Texarkana 2000, pet. ref'd). Thus, at bar, the State had to prove not that appellant was
intoxicated at the time the officer conducted the field sobriety tests but when he was driving
on Crown Road. 

Application


 Appellant argues that the State presented no evidence of loss of faculties such as
erratic driving, poor balance, disorientation, or stumbling. Nor did the officer conduct the
field sobriety tests until an hour after appellant was initially detained. Thus, the State failed
to prove he was intoxicated at the time he operated the vehicle, he concludes. We
disagree.

 While the evidence may not illustrate that appellant drove erratically or exhibited
poor balance, disorientation, or stumbling, he did have slurred speech and bloodshot eyes,
according to the testimony of an officer. So too did he smell of alcohol. Appellant also
admitted to having three to four beers at the pub before leaving it. (4) To this we add 1) the
evidence of appellant having run or missed what one could view as an open and obvious
checkpoint with one police car and three uniformed officers located thereat, and 2) doing
poorly on the sobriety tests later administered to him. 

 It may well be that the field sobriety tests were delayed for about an hour. 
Furthermore, as the time gap between the initial detention and the administration of those
tests increases, their results may well become less probative. Owen v. State, 905 S.W.2d
434, 439 (Tex. App.--Waco 1995, pet. ref'd). Nevertheless, that does not mean that they
are per se inadmissible, irrelevant, or non-probative. Rather, the delay renders the
evidence potentially subject to exclusion via Rule 403. Id.; Tex. R. Evid. 403 (stating that
evidence may be inadmissible if its probative value is substantially outweighed by its
prejudicial effect). Yet, until excluded, it can serve as evidence susceptible to
consideration by the factfinder, despite the delay. Owen v. State, supra. And, appellant
does not here contend that the evidence was inadmissible under Rule 403. So, when the
results of the field sobriety tests are considered here, along with the evidence of bloodshot
eyes, slurred speech, the smell of alcohol, and the running of a checkpoint, their sum total
constitutes some evidence upon which a rational factfinder could hold, beyond reasonable
doubt, that appellant did not have the normal use of his mental or physical faculties by
reason of the introduction of alcohol into his body while driving down Crown Road. And,
such a finding would not be manifestly unjust or clearly wrong when tested against the
entire record. Accordingly, the evidence was neither legally nor factually insufficient to
support the verdict. 

 We affirm the judgment of the trial court. 


 Brian Quinn

 Justice

 

 

Do not publish.

 

 

 

 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 
2. Although the officers were employed by Crown Petroleum, their work was approved by the
Pasadena Police Department. 
3. Appellant does not argue that the Texas Constitution provides him any greater protection than the
United States Constitution. Therefore, we will not address that contention separately. 
4. There is no evidence of record suggesting that appellant normally had a speech impediment or
bloodshot eyes.



 extradition, a court considering release on
habeas corpus can do no more than decide (a) whether the extradition
documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the
person named in the request for extradition; and (d) whether the petitioner
is a fugitive.


Id. at 439 U.S. at 289, 99 S.Ct. at 534 (emphasis added). In short, extradition is mandated
by both the Constitution and federal law. And, being so mandated, neither can be avoided
through invocation of some state doctrine or law without running afoul the Supremacy
Clause of the United States Constitution. House v. Mayes, 219 U.S. 270, 282, 31 S.Ct.
234, 236, 55 L.Ed.2d 213 (1911) (holding that a state may exercise authority that is not in
conflict with the federal constitution). So irrespective of what Texas state courts may say
about Texas theories of comity, those theories cannot be invoked to supercede or alter the
mandate of article four, section two, clause two of the Constitution or §3182 of title 18 of
the United States Code. 

 Next, to the extent that appellant suggests that "extradition is, ultimately a matter of
comity or compact between the states," we have to disagree. Admittedly, the United States
Supreme Court has described the need for comity among the states as the reason for
article four, section two, clause two of the United States Constitution. Doran, 439 U.S. at
287-88, 99 S.Ct. at 534-35. Yet, it did so not as a means of suggesting that the states are
free to choose whether to extradite those accused of crimes but as a means of illustrating
the need for states to cooperate with each other. Simply put, the clause was enacted to
prevent one state "from becoming a sanctuary for fugitives from justice of another state
and thus 'balkanize' the administration of criminal justice among the several states." See 
id. So, those drafting the constitution incorporated this view of comity in "mandatory
language" via enactment of article four, section two, clause two of the Constitution. Id.
And, again, because it is now mandated by the Constitution rather than notions of
deference and respect, one state cannot ignore the directive merely because another
improperly did so. In those simple yet meaningful words of mothers throughout this nation,
"two wrongs do not make a right." 

 Accordingly, the order of the trial court denying the writ of habeas corpus is affirmed.

 Brian Quinn

 Justice




Publish.
1. It was noted in Martin, that Woods was decided long before Doran. People v. Martin, 208 Ill. App.
3d 857, 873, 567 N.E.2d 1097, 1100 (Ill App. Ct. 1991). 
2. Appellant suggests that a conflict of authority exists in Texas regarding the applicability of Woods. 
Sanchez is cited as an example of one intermediate appellate court rejecting the Illinois decision while Ex
parte McClintick, 945 S.W.2d 188 (Tex. App.--San Antonio 1997, no writ) is purportedly an example of a court
approving of Woods. However, the passage in McClintick to which appellant alludes merely states; "[u]nlike
the situation in . . . Woods . . . here we are not faced with a lengthy delay between extradition proceedings that
would raise a fairness question." Id. at 190-91. In saying that it was not faced with a situation like that in
Woods, the San Antonio Court of Appeals hardly "recognized that a lengthy delay between extradition
proceedings 'would raise a fairness question,'" as appellant suggests. It just said that the issue was not before
it. So we perceive no conflict of authority in Texas.