Opinion issued March 15, 2007

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00638-CR






EDWIN JAMES POWELL, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 981951






MEMORANDUM OPINION

 Appellant, Edwin James Powell, pleaded not guilty to the offense of capital
murder of his brother, David Powell, by intentionally burning the house in which his
brother was sleeping. (1) This charge was enhanced by a prior conviction for felony
murder by arson. On the jury's finding appellant guilty of capital murder, the trial
court assessed his punishment at life in prison. Appellant brings seven points of
error. He argues that the trial court committed reversible error through the following
rulings: overruling appellant's motions to suppress his first and second written
statements to arson investigators, on the grounds that he never waived his Miranda
rights; admitting hearsay evidence over appellant's objection; and admitting
extraneous-offense evidence that was not relevant and whose prejudicial effect
substantially outweighed its probative effect. In addition, appellant challenges the
legal and factual sufficiency of the evidence to support his conviction. We affirm.

Background


 Appellant shared a one-bedroom house on Dolly Wright Street in Houston with
his brother David. Witnesses at trial explained that conflict arose between the
brothers over who should live on the property, that other siblings had decided that
only appellant's brother should live in the house, that appellant was angry about this
decision, and that appellant's brother was angry because appellant had not yet moved
out of the house. A few weeks before the fire, appellant told his sister that he was
determined not leave the house and would burn it down with his brother in it. 

 Firefighters dispatched to the Dolly Wright location because of a fire there
arrived at about 3:00 a.m. and found appellant outside the house. Witnesses to the
fire observed appellant shouting to his brother to come out of the house, and appellant
told firefighters that the door into his brother's bedroom would be impossible to break
down and that appellant's brother had blocked another exit door with an
entertainment center. 

 After firefighters extinguished the fire, they found appellant's brother's dead
body on the bed in the bedroom. They also found a burning container on the porch
of the house. An officer arrived at the house at about 4:00 a.m. with a canine trained
to detect fire accelerants. The canine alerted to a container found inside the house
and to a spot inside the house near appellant's brother's bedroom; an arson
investigator who arrived at the house at about 6 a.m. determined that the point of
origin of the fire was the entrance to the bedroom and that the cause of the fire was
arson. Autopsy results showed that appellant's brother died of smoke inhalation and
thermal burns to his body; later investigation of the burn patterns of the fire showed
that it was impossible for appellant's brother to get out of the bedroom. 

 On the morning after the fire, at the Dolly Wright location, appellant told an
arson investigator that he smelled smoke at about 3:00 a.m. and tried to get into his
brother's bedroom, but could not. Another arson investigator, who arrived at the
Dolly Wright location at about 4:00 a.m., also spoke with appellant at the scene. He
later asked appellant to accompany him to his headquarters, where he took a
voluntary statement from appellant and from another adult male who was at the scene. 
An arson investigator who was among those dispatched to the fire returned to the
Dolly Wright location a week later. While there, he asked appellant to accompany
him to headquarters, where appellant gave his second statement. 

 Appellant was arrested over three months after the fire and charged with
murder. Though the charge to the jury authorized a finding of guilt for the lesser-included offense of arson, the jury found appellant guilty of murder.

Motion to Suppress


 Appellant's first two issues challenge denial of his motions to suppress
statements he made to arson investigators of the Houston Fire Department. Appellant
provided both statements to the investigators, who took notes of what appellant said
and later transcribed the notes, which appellant reviewed and then signed and dated. 
Appellant provided the first statement immediately after the fire and provided the
second statement one week later. The statements describe appellant's actions before
and after the fire. In the first statement, appellant stated that he was asleep in the
house when his brother's bedroom caught on fire, that he tried to open the door to the
bedroom, but could not, and that he went outside and shouted to a neighbor to call the
fire department. The second statement provided additional details concerning
appellant's actions on the eve of the fire, including the statement that he watched a
Steven Segal movie entitled "Fire Down Below" before he went to bed. The record
reflects that the "bad guy" in the film set a church on fire with the knowledge that a
minister was inside the church building. 

 Appellant contends that the trial court should have suppressed both statements
because neither officer issued a Miranda (2) warning before obtaining appellant's
statement. The trial court denied appellant's motions to suppress and signed findings
of fact and conclusions of law, which include the following: (1) appellant was not
under arrest when either statement was taken; (2) the arson investigators who escorted
appellant to the arson bureau were credible witnesses; and (3) both statements were
voluntarily given. 

A. Standard of Review

 We review the trial court's ruling on a motion to suppress for abuse of
discretion. State v. Dixon, No. PD-0077-05, 2006 WL 335993, at *3 (Tex. Crim. App.
June 14, 2006); State v. Garrett, 177 S.W.3d 652, 656 (Tex. App.--Houston [1st
Dist.] 2005, pets. ref'd). A trial court abuses its discretion by not suppressing illegally
obtained evidence, which is rendered inadmissible by article 38.23 of the Code of
Criminal Procedure. (3) Garrett, 177 S.W.3d at 655 (citing Erdman v. State, 861 S.W.2d
890, 893 (Tex. Crim. App. 1993)); see Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005).

 We view the record on the motion to suppress in the light most favorable to the
trial court's ruling, and we will reverse the trial court's determination only if it is
"outside the zone of reasonable disagreement." Dixon, 2006 WL 335993, at * 3. We
will affirm the lower court's ruling if it is reasonably supported by the record and is
correct on any theory of law applicable to the case. Id. (citing Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990)). We defer almost totally to a trial court's
determination of historical facts, whether implied, or, as here, expressly stated in
findings of fact and resulting conclusions of law; but we review the court's application
of the law of search and seizure to those facts de novo. Id. (citing State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing Carmouche v. State, 10 S.W.3d 323,
328(Tex. Crim. App. 2000) and Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997)).

B. Appellant Not in Custody

 An accused must generally be in custody before Miranda rights are triggered. 
See Meek v. State, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990). Appellant
acknowledges this well-settled principle, but contends that the investigating officers
purposefully engaged in tactics designed to undermine appellant's Miranda rights, as
occurred in Missouri v. Seibert, 542 U.S. 600, 124 S. Ct. 2601 (2004). As in the trial
court, appellant relies on Seibert to argue that the investigating officers who
interviewed him and obtained his statements violated his Miranda rights and that the
trial court should, therefore, have suppressed his statements. Seibert does not apply. (4)
In contrast to this case, the suspect in Seibert was clearly under arrest, in custody, and,
for those reasons, entitled to Miranda warnings before any questioning could occur. 
See id. at 604-06,124 S. Ct. at 2606. Appellant was not in custody when he gave
either statement and was not arrested until three months later. 

C. Appellant Not in Custodial Interrogation

 Because he was not formally arrested or in custody when he made his
statements, and does not contend otherwise, appellant's Miranda rights could have
attached only if the questioning by the investigating officers amounted to "custodial
interrogation." See Miranda, 384 U.S. at 444, 86 S. Ct. at 1612; see also Dowthitt v.
State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (holding that noncustodial
interrogation had escalated into custodial interrogation); Meek, 790 S.W.2d at 621 &
n.2 (quoting Miranda, 384 U.S. at 444, 86 S. Ct. at 1612, for definition of "custodial
interrogation" as "'questioning initiated by law enforcement officers after a person has
been taken into custody or otherwise deprived of his freedom of action in any way'"). 

 A person is "in custody" only if, "under the circumstances, a reasonable person
would believe that his freedom of movement was restrained to the degree associated
with a formal arrest"; moreover, the reasonable person standard presupposes an
innocent person, and the subjective intent of law-enforcement officials is irrelevant
unless it is communicated or otherwise manifested to the suspect. Dowthitt, 931
S.W.2d at 254. The subjective belief of the suspect is also irrelevant except to the
extent that it, too, is manifested in the words or actions of the law-enforcement
officials. Id. Unless the subjective intent of either the law-enforcement officials or
the suspect is manifest, therefore, the relevant factors for determining custody are (1)
probable cause to arrest and (2) the focus of the investigation. Id. Entirely objective
criteria, therefore, determine whether a suspect is in custody. See id. at 255. Though
station-house questioning, as occurred here, does not constitute custodial interrogation
in and of itself, an initial, consensual interrogation may escalate into custodial
interrogation because of police conduct during the encounter. Id. 

 The officers who investigated the fire in this case believed the fire was arson,
but they had another suspect when appellant was first interviewed and gave his first
statement. Though appellant was a suspect when he gave his second statement, he was
not informed that he was a suspect; he was escorted to the arson bureau with another
person, who was also interviewed; and he was not arrested until three months later. 
Four officers testified at the hearing on appellant's motions to suppress.

 1. Appellant's First Statement

 Arson investigators Gee and Jackson testified concerning appellant's first
statement. Viewed in the light that favors the trial court's express findings, the record
shows that the officers were investigating the fire because circumstances discovered
at the scene suggested arson. Appellant was asked to give a statement because he was
a witness to the fire. He accompanied Officer Gee voluntarily to the arson bureau and
was not handcuffed. He sat in the front seat of Officer Gee's car. Because appellant
had lost his brother in the fire just that morning, Officer Jackson elected to interview
appellant in a conference room, as opposed to an interview room, thinking that he
would be more comfortable. Appellant drank coffee during the interview and had two
smoke breaks. He understood that his statements were voluntary and was aware that
he was free to leave. At the end of the interview with Officer Jackson, Officer Gee
gave appellant a ride home. 

 Nothing in the circumstances of appellant's first interview and statement
objectively demonstrates that a reasonable, innocent person would have considered 
his freedom of movement restrained to the degree associated with a formal arrest. See
Dowthitt, 931 S.W.2d at 254. The interview focused entirely on developing facts
known by appellant that might lead to additional information, and nothing in
appellant's responses to Officer Jackson's questions or either officer's testimony gave
rise to probable cause to arrest appellant. See id. We therefore hold that the trial court
properly ruled that appellant's first statement was not the result of custodial
interrogation.

 2. Appellant's Second Statement

 Officers Snowden and Jones testified concerning appellant's second statement,
taken a week after the fire. Officer Snowden drove appellant and another adult male
to the arson bureau after they agreed to give voluntary statements. Appellant was
asked to give a second statement because Officer Snowden considered the first
statement vague. As before, appellant was free to leave at any time. Officer Jones
considered appellant a suspect by then, but only because the chief suspect had an alibi,
and appellant was the only other person living at the Dolly Wright location at the time
of the fire. Appellant was not arrested until three months later. 

 As with appellant's first statement, nothing in the circumstances of his second
interview and statement objectively demonstrates that a reasonable, innocent person
would have considered his freedom of movement restrained to the degree associated
with a formal arrest. See id. Though appellant was a suspect by that time, he was not
told that he was a suspect, and this interview also focused entirely on developing facts
that might lead to additional, more specific information. Likewise, nothing in
appellant's responses to Officer Jones's questions or either officer's testimony
suggests that the interview gave rise to probable cause to arrest appellant. See id. We
therefore hold that the trial court did not err by ruling that appellant's second
statement was not the result of custodial interrogation.

 Because neither the first nor the second statement resulted from custodial
interrogation, the trial court did not err by finding that appellant's first and second
statements were voluntarily given. We therefore conclude that the trial court did not
abuse its discretion by denying appellant's motions to suppress. 

 We overrule appellant's first and second points of error.

Hearsay Objection Overruled, but Error Waived


 In his third point of error, appellant contends that the trial court erred by
overruling his objection to the following question by the prosecutor to Derrick Smith,
who was initially a suspect: "What did [appellant's brother] tell you he wanted to do
to [appellant]?" Appellant objected that the question elicited inadmissible hearsay. 
During a hearing conducted outside the presence of the jury, Smith replied to the
prosecutor's question by stating that appellant's brother said that he "wanted to kill
[appellant]." The trial court permitted the testimony on the grounds that it was
admissible as a statement against penal interest, relevant, and not unfairly prejudicial. 
 We conclude that we need not decide whether the trial court ruled correctly,
because the record establishes that appellant waived any possible error in the trial
court's admitting Smith's testimony. Under cross-examination by appellant, Smith
repeated the same testimony without objection. See Lane v. State, 151 S.W.3d 188,
193 (Tex. Crim. App. 2004).

 After the prosecutor's direct examination, which included the statement by
Smith to which appellant objected, appellant's counsel posed the following question
to Smith in an attempt to clarify the sequence of events preceding the fire: 

 Two days before the fire, [appellant's brother] was bringing the clothes,
two days later, he's dead, right?


Smith then replied as follows:


 No. The next day [appellant's brother] came back and told me that he
wanted to kill his brother.


[Emphasis added.] Appellant's counsel did not object to the statement, but simply
stated, "Uh-huh." (6) By not objecting, appellant waived any error in the admission of
Smith's initial statement. See id.

 We overrule appellant's third point of error.

Extraneous-Offense Evidence Properly Admitted


 Appellant's fourth and fifth points of error challenge the admissibility of
evidence of an extraneous offense. The evidence consisted of a statement by appellant
in which he admitted setting a fire that caused a person's death. Appellant challenges
the relevancy of the evidence in his fourth point of error; in his fifth point of error, he
argues that the prejudicial effect of the evidence substantially outweighed its probative
effect. 

 Appellant gave the written statement in 1979, when he was convicted of arson
murder. The trial court ruled the statement admissible at the conclusion of a hearing
held outside the jury's presence. The statement was then admitted into evidence
through the testimony of Officer Jones, now retired from the arson bureau, who took
the statement while investigating the arson murder of Kenneth Chambers, for which
appellant was convicted in 1979. Appellant was 35 years old at the time and lived at
the Dolly Wright location with his mother. In the statement, appellant described a
fight with Chambers that resulted in Chambers's injuring appellant, by hitting him
with a skateboard, and Chambers's drawing a pistol on appellant and threatening to
kill him. Appellant further stated, 

 I took all that I could take and I got a garden hose and drew some
gasoline from a friend's car and put it in two beer bottles. I waited until
I got the chance and poured the gasoline on [Chambers] and set him on
fire. I used a match from a box of matches that I still have in my
possession and am turning them over to [Officer Jones]. After I poured
the gasoline on [Chambers] and set him on fire, I ran toward Little York
Street . . . and went home.


Officer Jones confirmed that Chambers died from the injuries inflicted by appellant.


 Rule 404(b) of the Rules of Evidence states that "[e]vidence of other crimes,
wrongs, or acts is not admissible to prove the character of a person in order to show
action in conformity therewith." Tex. R. Evid. 404(b); see Martin v. State, 173
S.W.3d 463, 466 (Tex. Crim. App. 2005) (quoting same). 

 Yet, rule 404(b) further provides that extraneous-offense evidence may "be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident[.]" See
Martin, 173 S.W.3d at 466. Moreover, rule 404(b)'s list of admissible purposes is
illustrative, rather than exhaustive, and extraneous-offense evidence may be
admissible when a defendant raises a defensive issue that negates an element of the
offense. See id. Rule 403 further provides that evidence, though relevant, may be
excluded "if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury . . . ." (7) Tex. R. Evid. 403;
see Martin, 173 S.W.3d at 466 (quoting same). 

 To be admissible under both rule 404(b) and rule 403, extraneous-offense
evidence must satisfy the following two-prong test: the evidence must be relevant to
a fact of consequence in the case, apart from its tendency to prove conduct in
conformity with character, and the probative value of the evidence must not be
substantially outweighed by unfair prejudice. See id. 

 The relevancy of extraneous-offense evidence, as contemplated by rule 404(b),
is reserved to the discretion of the trial court. See Martin, 173 S.W.3d at 466; Moses
v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We review the trial court's
rulings that result from reconciling rules 404 and 403 for abuse of discretion. Martin,
173 S.W.3d at 467; Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). 
We must uphold the trial court's judgment if the ruling was correct on any theory of
law applicable to the case, in light of the proceedings before the trial court when it
made the challenged ruling, provided the ruling is "at least within the zone of
reasonable disagreement." Martin, 173 S.W.3d at 467 (citing Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (opinion on reh'g)).

 At the conclusion of the hearing concerning the admissibility of the statement,
the trial court preceded its ruling by specifying that, in balancing the rule 404(b) and
rule 403 factors, the court had considered the similarity of the two offenses, including
the specific details of a dispute that had escalated, use of the same ignitable liquid in
small containers, and an apparent wait for an opportunity to execute the crime. The
trial court also emphasized that appellant had clearly placed the issue of identity in
dispute by blaming another for the crime and that his statement was, therefore,
relevant. In the context of assessing the strength of the evidence and the time devoted
to it during the trial, the trial court remarked that the evidence would be presented
through a single witness only out of a total of 21 witnesses and two days' testimony. (8)
In ultimately ruling that appellant's statement was admissible, the trial court specified
that it had concluded, after balancing and weighing well-established factors relating
to admissibility of extraneous offenses, that the danger of unfair prejudice from
appellant's statement did not substantially outweigh its probative value. (9) 

A. Identity Contested

 Because there were no eyewitnesses to the fire that killed appellant's brother,
identity became a contested issue. See Lane v. State, 933 S.W.2d 504, 518 (Tex. Crim.
App. 1996). Identity was further contested because appellant attempted throughout
trial to show that another person had quarreled with appellant's brother and was the
perpetrator. 

B. Relevancy

 Pursuant to rule 404(b) and settled law, extraneous-offense evidence may be
relevant and thus admissible to establish identity when identity is contested. Lane,
933 S.W.2d at 519; Thomas v. State, 126 S.W.3d 138, 144 (Tex. App.--Houston [1st
Dist.] 2003, pet. ref'd). The State relied principally on Lane in defending the
admissibility of appellant's statement in the trial court. To be admissible to show
identity, an extraneous offense must be so similar to the charged offense that the
offenses may be considered the accused's "handiwork," Lane, 933 S.W.2d at 519, or
his "signature" crime. See Thomas, 126 S.W.3d at 144. If sufficiently common
distinguishing characteristics connect the extraneous offense and the charged offense,
such that the probative value of the evidence outweighs its prejudicial effect, the court
may admit the evidence. See Thomas, 126 S.W.3d at 144. 

 In determining the similarity of offenses for the purpose of establishing identity,
appellate courts should consider both the specific characteristics of the offenses and
the time interval between them. See Thomas, 126 S.W.3d at 144; Johnson v. State, 68
S.W.3d 644, 651 (Tex. Crim. App. 2002) (citing Lane, 933 S.W.2d at 519). Sufficient
similarity may be shown either by proximity in time and place or by a common mode
of committing the offenses. Lane, 933 S.W.2d at 519 (citing Ransom v. State, 503
S.W.2d 810, 813 (Tex. Crim. App. 1974)); Thomas, 126 S.W.3d at 144.

 Though the time and place of the offenses were not in close proximity in Lane,
in which the offenses were a decade apart and occurred in different states, the Court
of Criminal Appeals held that the mode of committing the offenses and the
circumstances surrounding them were sufficiently similar for the extraneous offense
to be relevant to the issue of identity. 933 S.W.2d at 519. 

 The same reasoning applies here. Though remote in time, some remoteness
results from appellant's having spent 11 years in prison for his prior arson-murder
conviction of Kenneth Chambers. On examining both offenses, we conclude that the
circumstances of the earlier conviction are remarkably similar to those of the arson
murder charged here. Both offenses occurred in the neighborhood where appellant
had lived most of his life, and both involved victims whom appellant knew well. The
victim was appellant's brother David in this case, and his friend Kenneth Chambers
was the victim in his earlier conviction for arson. Both victims died from their burns. 
Both offenses occurred after a heated dispute involving the victim and appellant. In
each instance, appellant planned the offense and waited for an opportunity to commit
it; in each instance, that opportunity came late at night. Both victims were alone, and
both had weapons on or near their persons. Appellant stated in his confession in the
earlier proceeding that Chambers had threatened him with a gun after first hitting him
with a skateboard; in this case, a large knife that appellant's brother normally kept on
a shelf was found under his burnt body. Gasoline, which requires igniting and does
not self-ignite, was the fluid used for both arson offenses, and in each incident, the
gasoline was poured from a container before it was ignited. Similarly, the gasoline
had to be brought to the scene of the offense, and in each instance, a container
intended for beverages was used to transport the gasoline before it was poured out
from that container. In the earlier incident, appellant used two beer bottles; in this
incident, a beverage cooler smelling of gasoline was recovered on the back porch. The
circumstances of each incident demonstrate planning to ensure an adequate supply of
ignitable fluid. 

 Appellant contends the crimes are dissimilar, because nothing establishes that
gasoline was poured on his brother. The State need not establish, however, that both
crimes are identical, but that they are merely sufficiently similar to render the evidence
of the extraneous offense relevant and therefore admissible. See Lane, 933 S.W.2d at
519. Though it is unclear in this case whether gasoline was poured directly on
appellant's brother, photographs of the bedroom show a pour pattern in close
proximity to the bed on which the victim was found and on which he died due to
"smoke inhalation and thermal burn." In addition, the bedroom was the point of origin
of the fire, and a pour pattern was burnt into the wood of the bedroom floor "about the
length of the bed." The pour pattern covered a large portion of the room, came
through the center of the room, and could have resulted from someone's pouring
ignitable liquid while backing out of the room or throwing the liquid into the room
while standing at the door to the kitchen. 

 Though analysis of debris from the floor indicated presence of gasoline, and
samples of the victim's clothing and his mattress did not, a criminologist with the State
fire-marshall laboratory explained that analysis of samples has only a 50% accuracy
rate, and that evaporation, the nature of fire, and suppression activities by firefighters
at the scene could have contributed to the negative results on the samples taken. 

 We hold that the trial court did not abuse its discretion by concluding that the
statement in which appellant confessed to the extraneous offense of arson murder in
1979 was relevant to prove identity in this case under Tex. R. Evid. 404(b). 

 Accordingly, we overrule appellant's fourth point of error.

C. Probative Value Not Substantially Outweighed by Danger of Prejudice

 We must also analyze whether the danger of unfair prejudice from the evidence
of appellant's 1979 confession substantially outweighed its probative effect, in
accordance with Tex. R. Evid 403. See Martin, 173 S.W.3d at 466; Lane, 933 S.W.2d
at 520. 

 We consider several factors in conducting this analysis, as follows: 

 (1) how compellingly evidence of the extraneous misconduct serves
to make a fact of consequence more or less probable; 


 (2) the potential of the "other crime, wrong, or act" to impress the jury
in some irrational but indelible way;


 (3) the trial time needed to develop the evidence of the extraneous
misconduct; and


 (4) how greatly the proponent needs the evidence of the extraneous
transaction. 


Lane, 933 S.W.2d at 520 (citing Montgomery, 810 S.W.2d at 389-90). If the trial
court's rule 403 analysis is "within the zone of reasonable disagreement," we must
uphold the trial court's decision to admit the evidence. See id. (citing Montgomery,
810 S.W.2d at 391); Martin, 173 S.W.3d at 467 (also citing Montgomery, 810 S.W.2d
at 391).

 We agree with the trial court's determination that appellant's 1979 confession
was highly relevant, given the similarity of the circumstances between that offense and
the offense at issue in appellant's trial. Because there were no eyewitnesses and
because appellant had joined in placing identity at issue, by claiming that another
person who had quarreled with his brother was the perpetrator, the 1979 offense was
highly compelling evidence that made appellant's identity challenge much less
probable. And because appellant had joined in disputing identity, the State's need, as
proponent of appellant's 1979 confession, was great, though the time needed to
present the evidence was minimal, and though the evidence could be presented briefly
and through a single witness. Lastly, given the similar circumstances of the offenses,
there was little potential that appellant's 1979 conviction would impress the jury
irrationally and indelibly. We note, in this regard, that a limiting instruction is helpful
to minimize the "impermissible inference of character conformity," see Lane, 933
S.W.2d at 520, and that the trial court offered to include a limiting instruction in the
jury charge, but that appellant did not request one. 

 On applying the rule 403 factors to this case, we cannot say that the trial court
abused its discretion through its express ruling that any prejudice arising from
admitting appellant's 1979 offense into evidence did not substantially outweigh the
probative value of that evidence. See Tex. R. Evid. 403.

 Accordingly, we overrule appellant's fifth point of error. 

Sufficiency Challenges


 Appellant's sixth and seventh points of error challenge, respectively, the legal
and factual sufficiency of the evidence to sustain his conviction, on the grounds that
the State failed its burden to prove appellant's intent to cause his brother's death. See
Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). By finding appellant guilty of
capital murder and rejecting the alternative finding of arson, the jury necessarily found
that appellant had the requisite intent. See Masterson v. State, 155 S.W.3d 167, 172
(Tex. Crim. App. 2005) (concluding that jury's finding defendant guilty of murder,
despite availability of manslaughter finding, indicated that jury believed that defendant
intended to commit murder). 

A. Legal Sufficiency

 In addressing a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Because we view the evidence in the
light that favors the conviction, we must resolve conflicting evidence in favor of the
jury's finding and may not reweigh the evidence and substitute our judgment for the
jury's verdict. See id. Yet, that is precisely what appellant's arguments demand of us
in contending that the evidence is legally insufficient to establish his intent to murder
his brother. 

 Appellant focuses on conflicts among the witnesses, who included family
members who testified that they had never observed animosity between the brothers. 
In addition, emphasizing testimony that his brother had threatened to kill him,
appellant concludes by contending that it was "just as likely as not" that appellant's
brother started the fire with the intent to kill appellant. This evidence, however, does
not support the jury's verdict, but, rather, conflicts with the verdict, in violation of the
standard of review that we must apply. See id. Moreover, none of the evidence on
which appellant relies compels, as a matter of law, the conclusion that appellant lacked
the intent to murder his brother. In assessing appellant's legal-sufficiency challenge,
therefore, we cannot consider the evidence on which appellant relies, see id., and
appellant does not challenge the legal sufficiency of the evidence on any alternative
grounds. 

 Accordingly, we overrule appellant's sixth point of error.

B. Factual Sufficiency 

 In contending that the evidence is factually insufficient to support the verdict,
appellant again disputes the jury's implicit finding that he had the intent to murder his
brother, because it "was just as likely that [appellant's brother] started the fire to harm
the appellant and was trapped by the flames." 

 When we address a challenge to the factual sufficiency of the evidence, we
review all of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex.
Crim. App. 1997). We will set the verdict aside only if (1) the evidence is so weak
that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the
great weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11. Under
the first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417 
(Tex. Crim. App. 2006). Under the second prong of Johnson, we cannot declare that
a conflict in the evidence justifies a new trial simply because we disagree with the
jury's resolution of that conflict. Watson v. State, 204 S.W.3d at 417. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury's verdict. Watson v.
State, 204 S.W.3d at 417. In conducting a factual-sufficiency review, we must also
discuss the evidence that appellant contends most undermines the jury's verdict. See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 

 The fact-finder alone determines what weight to place on conflicting testimony
because that determination depends on the fact-finder's evaluation of witnesses'
credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the sole determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407 n.5.

 We disagree with appellant's contention that the evidence is factually
insufficient because it is equally consistent with appellant's brother's having set the
fire and dying because he was trapped by the flames. Given the evidence that the
inside entrance door to appellant's brother's bedroom door was locked, that the exit
from the bedroom to the outside was also blocked by a piece of heavy furniture, and
that firefighters located the container that most likely held the gasoline used to set the
fire on the porch, appellant's contention that his brother set the fire is not even a
reasonable alternative hypothesis. See Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim.
App. 1999).

 But, even if appellant were correct in stating that the evidence is equally
consistent with either his or his brother's having set the fire, that premise would not
suffice to establish that the evidence is factually insufficient to support the jury's
verdict and its implicit finding that appellant had the intent to kill his brother. Even
when a reasonable alternative hypothesis applies, it is merely relevant to, but not
determinative of, a factual-sufficiency challenge. Wilson, 7 S.W.3d at 141. As
addressed above, for evidence to be factually insufficient, either the great weight of
the evidence must preponderate against the verdict, or the evidence that favors the
verdict must be so weak that the verdict is clearly wrong and manifestly unjust. See
Johnson, 23 S.W.3d at 11. 

 Having reviewed the record in the requisite neutral light, we hold that the
evidence is factually sufficient to support the jury's finding that appellant had the
specific intent to kill his brother. The great weight of the evidence does not
preponderate against the verdict, and the evidence that favors this implicit finding is
not so weak that the jury's verdict is clearly wrong and manifestly unjust. See id. 

 We overrule appellant's seventh point of error. 

 Conclusion


 We affirm the judgment of the trial court.





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. Appellant's first trial ended in a mistrial.
2. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). 
3. Though article 38.23 of the Code of Criminal Procedure renders illegally obtained
evidence inadmissible, Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005)
,
appellant invokes only the protections of Miranda on appeal. 
4. In Missouri v. Seibert, 542 U.S. 600, 124 S. Ct. 2601 (2004), the suspect confessed
to murder twice. The trial court suppressed the first confession, but ruled that the
second confession was admissible, and the Supreme Court addressed the admissibility
of the second confession. Id. at 604, 124 S. Ct. at 2605. The arresting officer had
made a "conscious decision," consistent with established police protocol, to
interrogate the suspect without providing Miranda warnings, in the hope of obtaining
a confession. See id. at 605-06, 124 S. Ct. at 2606. After obtaining the confession
and again pursuant to protocol, the officer allowed the suspect a 20-minute break,
after which she received a Miranda warning and, in response to similar questioning,
confessed a second time to the same officer. See id. at 604-05, 124 S. Ct. at 2606. (5)
5. The practice of issuing Miranda warnings only after initial questioning became
known as "question first" protocol. See Missouri v. Seibert, 542 U.S. 542, ___ 124
S. Ct. 2601, 2609 (2004). The protocol called for "giving no warnings of the rights
to silence and counsel until interrogation had produced a confession"; the
interrogating officer then "follows . . . with Miranda warnings and then leads the
suspect to cover the same ground a second time." Id. at ___, 124 S. Ct. at 2605. 
 "" 
 ' 
 
 
 - - 
6. We note that appellant did not obtain a running objection earlier to any testimony by
Smith that pertained to appellant's brother's statement.
7. Rule 401 defines "relevant" evidence as that which "has any tendency to make the
existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence." Tex. R. Evid. 401;
see Martin v. State, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005) (quoting same). 
8. The trial court explained that it had based its estimate of the total witnesses on the
number of witnesses at appellant's first trial.
9. Though the trial court offered to include a limiting instruction in the court's charge, 
appellant indicated he did not wish that it be included.