**Opinion issued February 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NOS. 01-12-00325-CR
## 01-12-00326-CR

_____

**YOSULF SHAHEED BENSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 65676 (Counts one & two)**

---

## MEMORANDUM OPINION

Following a jury trial, appellant Yusulf Shadeed Benson was convicted of intoxicated assault[1] and felony driving while intoxicated[2] (DWI). He received sentences of five years' and seven years' confinement, respectively, to be served concurrently.

Appellant appeals here challenging (1) the trial court's failure to grant a mistrial for jury misconduct, and (2) the sufficiency of the evidence to support his convictions. We affirm.

## BACKGROUND

This case arises out of a fatal automobile-motorcycle collision. On the night of October 17, 2010, appellant was driving south on Highway 288 and ran into the back of Charles Bundrant's motorcycle. Dr. Otis Egins, a physician, stopped to render aid shortly after the accident. Appellant told Egins that the motorcycle came into his lane and he could not avoid hitting it. Egins administered chest compressions until EMS arrived. Egins was not close enough to appellant to smell whether he had alcohol on his breath, and he testified that he did not recall appellant slurring his speech.

Officer C. Turner is a certified accident reconstructionist with the Pearland Police Department who investigated the accident. He testified that he was unable to locate any witness who had actually seen the accident occur. He interviewed

---

[1]   Trial Court no. 65676 (count one); Appellate Court no. 01-12-00325-CR
[2]   Trial Court no. 65676 (count two); Appellate Court no. 01-12-00326-CR

2

appellant, who claimed that Bundrant had come onto the freeway and crossed in front of appellant's car. Appellant also told Bundrant that he "mashed on the pedal as hard as he could," but still hit Bundrant's motorcycle. Turner did not ask him which pedal.

Bundrant was life-flighted to Hermann Hospital with severe injuries. He was unconscious with multiple fractures, and was bleeding in three areas of his brain. Four days later, after doctors determined that he had no chance of a functional neurological recovery, life-sustaining support was discontinued and he died shortly thereafter.

The on-site investigation revealed that appellant's car had not braked before hitting Bundrant's motorcycle, and that Bundrant had not—as appellant claimed—been entering the freeway right before appellant struck him. Appellant's vehicle was travelling faster than the 65-mile-per-hour posted speed limit, and both his car and Bundrant's motorcycle were traveling the same direction in the same lane when appellant ran into the back of the motorcycle. The tiremarks indicated that the motorcycle was pushed by appellant's car after the impact, and pictures were introduced into evidence showing where Bundrant's head made contact with appellant's windshield. A search of appellant's car at the scene revealed a bottle of vodka in the trunk, and the lid to that bottle in the center console.

While interviewing appellant, Turner noticed an odor of alcoholic beverage coming from his breath, and also that appellant's eyes appeared glassy and his eyelids appeared droopy. He explained that these are indicators that someone could be under the influence of alcohol. Turner then instructed Officer A. Rudenko to further investigate appellant's sobriety.

Rudenko, with the assistance of Officer Lucas, took appellant to the police station to conduct their intoxication investigation because they determined that the scene of the accident was too noisy and distracting. At the police station, Rudenko noticed that appellant looked fatigued, his eyes were glassy, and Rudenko detected a moderate odor of alcohol. Rudenko asked appellant if he would submit to field sobriety tests. Appellant agreed, stating that "he did not mind taking responsibility," and that he knew "he would be over the limit if he gave a breath specimen." The officers then administered standard field sobriety tests consisting of the horizontal gaze nystagmus (HGN), walk-and-turn test, and one-leg stand test. Appellant exhibited six clues out of a possible six on the HGN, and two clues out of four on the one-leg stand test, both indicating intoxication. He exhibited only one out of eight clues on the walk-and-turn test. At that point, Rudenko was of the opinion that appellant was intoxicated and had lost the use of his mental and/or physical faculties.

Appellant initially consented to a breath sample, but withdrew that consent before it was done. Rudenko informed appellant that a blood draw was mandatory under the circumstances, and he was then taken for a blood test.

Laura Cook with the Brazoria County Crime Lab, tested appellant blood sample and found the alcohol concentration to be .185 grams per hundred milliliters, which is over the legal limit in Texas of .08 grams per a hundred milliliters. She testified that if the alcohol level in appellant's blood drawn about 4:00 a.m. was .185, it would have been even higher at 1:30 a.m., around the time of the accident.

Appellant was charged with driving while intoxicated and intoxication assault. After the jury was empanelled, but before opening statements, appellant filed a motion for mistrial, arguing that the jury had been compromised by one of the jurors who read an article about the case. After hearing arguments of counsel and testimony from members of the jury panel, the trial court denied the motion. Appellant was convicted on both counts and timely appealed.

## ISSUES ON APPEAL

Appellant raises the following two issues:

(1) "The trial court reversibly erred and abused its discretion in denying appellant's motion for a mistrial argued as a motion for a new trial due to jury contamination."

(2) "The evidence adduced at trial was legally insufficient."

5

# MOTION FOR MISTRIAL

After the jury was selected and sworn in, the court notified the parties that a lawyer had informed the court that he overheard Juror No. 11 outside telling someone else that he had googled something about appellant. The court called Juror No. 11 in and questioned him about what he had specifically done and seen. The juror explained that, on the previous Saturday, he had seen something about the charges against the appellant on an online news site, *The Facts*. After he was selected to serve on the jury, he recognized the appellant's last name, and "relooked it up" to see if appellant was the person he had read about.

The court had him locate the article online, and read its contents in the record:

> *The Facts*, your regular site. 'Houston man indicted on intoxicated manslaughter' by John Tompkins, posted Saturday February 26, 2011 at 2:00 a.m. Angleton – A Houston man accused of hitting and killing a motorcyclist while driving drunk has been indicted on a single count of intoxicated manslaughter. Brazoria County Grand Jury indicated Yusulf Benson, 32, on the charge Thursday. If convicted, he faces up to 20 years in prison.

The juror verified for the court that this represented all he had read and that it would not change his ability to be fair and impartial. The court admonished him not to do any further investigating.

The following morning, appellant's counsel moved for a mistrial, arguing that Juror No. 11's credibility was at issue because the article that he claimed to

have read the previous Saturday had actually been posted online one year previously. The court then interviewed each juror individually to confirm that they had not overheard "any conversations that discussed the facts of this case." Finally, the court interviewed Juror No. 11 again, and confirmed that the person he had discussed the case with outside was not also on the jury.

The court denied appellant's motion for new trial and admonished the jury again not to investigate the case or discuss it with anyone outside of the jury's deliberations:

> No one may discuss this case with you during your service as a juror. If anyone tries to do so, please let me know or let the bailiff know immediately.
>
> . . . .
>
> If someone — don't discuss the evidence in this case with your fellow jurors until you're instructed to deliberate, or with your spouse, significant other, or your friends until you have been discharged from jury service. You are not permitted to read any newspaper articles about this trial, watch any television or listen to any radio reports that discuss this particular matter. And as I talked about yesterday, that includes the Internet, Google, anything that you have access to that might give you additional information about this case. One, you never know if those sources are correct; and Two, you all need to hear the same evidence and make your decision on what you hear here in the courtroom. So my instructions to you are not to have — seek out any additional information about this case.

## A. Parties' Arguments

In his first point of error, appellant argues that Juror No. 11 "was exposed to media about said cause, that the exposure tainted the integrity of the jury process,

and that the trial court should have granted a mistrial or motion for new trial." In response, the State contends that the trial court was within its discretion to refuse to order a new trial because appellant has not shown he was "prejudiced by the very general article read by one juror who did not communicate its contents to the other jurors," and because the "trial court's jury instruction would have cured any potential error."

## B. Applicable Law

We review the trial court's ruling on a motion for mistrial under an abuse for discretion standard. *Moreno v. State*, 952 S.W.2d 44, 45 (Tex. App.—San Antonio 1997, no pet.). The resolution of claims of jury prejudice from mid-trial media exposure turn on the individual facts of each case. *Ladner v. State*, 868 S.W.2d 417, 423 (Tex. App.—Tyler 1993, pet. ref'd) (citing *Marshall v. United States*, 360 U.S. 310, 312 (1959)).

When an appellant demonstrates that prejudicial publicity reached the jury and argues that the trial court abused its discretion in denying a request for a mistrial, we assess whether certain "factors [are present that] may vitiate the harmful effect of the prejudicial news account or broadcast." *Hudson v. State*, No. 12-03-00035-CR, 2004 WL 1852965, at *3 (Tex. App.—Tyler, Aug. 18, 2004, pet. ref'd) (mem. op., not designated for publication). "Chief among these factors" is whether the jurors "deni[ed] that they had been or would be influenced by what

8

they had read" and whether "the trial court, after discovering the jury's exposure to prejudicial press accounts, adequately instructed the jurors that they must put aside any impression formed from the article and decide the case solely upon the evidence admitted in court." *Id.* Finally, because "[s]ome information may be so toxic that there can be no realistic expectation of purging its taint, . . . the nature of the information is also a factor in determining if its harmful effect is curable." *Id.*

## C. Analysis

Appellant has not demonstrated that the trial court abused its discretion by refusing to grant a mistrial. In substance, the on-line article at issue stated, "A Houston man accused of hitting and killing a motorcyclist while driving drunk has been indicted on a single count of intoxicated manslaughter." Appellant has not identified what information in this article could be prejudicial to Juror No. 11's consideration of his case. While the article incorrectly identified the charge against appellant as "intoxicated manslaughter" rather than the correct charge, i.e., "intoxication assault," the jury heard evidence that Bundrant died from his injuries, so the article did not provide any additional outside facts. The article also states that appellant was accused of "driving drunk," but that is likewise consistent both with the actual DWI and intoxicated assault charges presented to the jury and the actual evidence that the jury heard about appellant's blood alcohol level.

9

Given these facts, we cannot identify anything inherently prejudicial in the article. In addition, Juror No. 11 testified that the article would not impact his deliberations, and the trial court admonished both him individually and the jury as a whole to rely only on the admitted evidence.

The Beaumont Court of Appeals has considered similar facts and concluded the trial court's denial of a request for a mistrial was not an abuse of discretion. *See Herbst v. State*, 941 S.W.2d 371, 376–78 (Tex. App.—Beaumont 1997, no pet.). In that case, two jurors read a newspaper article about their case after the jury was empanelled, but before testimony began. *Id*. at 377. As in this case, the jurors were admonished by the trial court to disregard the article, and they both testified that the article would not affect their deliberations. *Id*. The Beaumont Court concluded that any potential harm was effectively cured:

> At any rate, we believe the integrity of the jury panel was not tainted by the newspaper article in question. The jurors had experienced a voir dire proceeding intensely focused upon the prejudicial effects of extensive pretrial publicity. The only two jurors who read the article in question told the trial court they were not affected by said article. Following this, the trial court painstakingly admonished the panel with regard to any further media coverage of the trial and expressly instructed the panel to disregard any outside information concerning the trial. We believe this procedure sufficient to ensure appellant a fair trial.

*Id*. at 377–78; *see also Hudson*, 2004 WL 1852965, at *3–4 (holding trial court was within its discretion to deny motion for mistrial based on three jurors reading newspaper article about case, reasoning that jurors testified they could disregard

article, the trial court admonished the entire jury to refrain from seeking outside information, and the "article was not so indelibly injurious that the harm could not be cured"); *Williams v. State*, No. B14-90-01115-CR, 1993 WL 102609, at *3–4 (Tex. App.—Houston [14th Dist.] April 8, 1993, pet. ref'd) (not designated for publication) (holding trial court was within its discretion to deny motion for mistrial based on juror reading newspaper article about case, noting that article was not prejudicial (as it contained information that would be presented at trial) and that juror confirmed that she would follow trial court's admonishment to decide the case based on the evidence); *Koole v. State*, No. 13-06-026-CR, 2007 WL 2409815, at *2–3 (Tex. App.—Corpus Christi Aug. 24, 2007, no pet.) (mem. op, not designated for publication) (holding trial court was within its discretion to deny motion for mistrial based on two jurors viewing news reports that allegedly contained extraneous information, reasoning that jurors told court that were not affected by news stories and trial court admonished panel to decide the case solely on evidence presented at trial).

We overrule appellant first point of error.

## SUFFICIENCY OF THE EVIDENCE

In his second point of error, appellant argues that the evidence was insufficient to support his convictions for intoxication assault or felony DWI.

11

**A. Standard of Review**

We review a challenge to the legal sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S. Ct. at 2786, 2789 & n. 11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443

U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating jury is sole judge of credibility of witnesses and weight to give their testimony). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *see also Clayton*, 235 S.W.3d at 778 (reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination").

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. (*quoting Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and

independently to the guilt of the accused." *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## B. Applicable Law

A person commits intoxication assault if that person "by accident or mistake, . . . while operating a motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another." TEX. PENAL CODE ANN. § 49.07(a)(1) (Vernon 2011). In this context, "serious bodily injury" means "injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 49.07(b).

The elements of DWI are satisfied with a showing that "the person is intoxicated while operating a motor vehicle in a public place." *Id*. § 49.04(a). Two prior DWI convictions elevate a DWI offense to a third degree felony. *Id*. § 49.09(b).

## C. Analysis

While appellant appears to generally challenge the sufficiency of the evidence to support both his conviction of intoxication assault and felony DWI, in his brief he expressly "focuses his attack on the evidence he had lost the normal use of his mental or physical faculties by reason of introduction of alcohol into his body." In other words, he contends there is insufficient evidence of his

14

intoxication—an element of both intoxication assault and DWI. In this context, "intoxicated" means:

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> (B) having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE ANN. § 49.01(2) (Vernon 2011).

Section 49.01(2) provides alternative methods for the State to demonstrate intoxication. *E.g.*, *Bradford v. State*, 230 S.W.3d 719, 722 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("The two theories of intoxication, per se and impairment, are not distinct offenses, distinct elements of the offense, or even alternative means of committing the offense, but are instead alternative means by which the State may *prove* intoxication."). However, "[t]he proof needed to show the 'loss of faculties' offense and the 'per se offense' are not mutually exclusive." *Daricek v. State*, 875 S.W.2d 770, 773 (Tex. App.—Austin 1994, pet. ref'd). A test showing blood alcohol concentration over the legal limit is evidence of a loss of faculties; conversely, evidence of failure to pass field sobriety tests shortly after driving a vehicle make it more probable that failed blood or breath tests taken later accurately reflect the driver's condition at the time of the offense. *Id*.

In this case, there is sufficient evidence of both methods of proving intoxication. There was evidence that, at 4:00 a.m., approximately three or four

hours after the accident, appellant's blood alcohol level was .185 grams per hundred milliliters, which is over the legal limit of .08 grams per hundred milliliters. Laura Cook with the Brazoria County Crime Lab testified that appellant's blood alcohol level would have been even higher at the time of the accident. This is some evidence of appellant's intoxication at the time of the accident. TEX. PENAL CODE ANN. § 49.01(2)(B); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

The jury's finding of intoxication is also supported by (1) Officer Turner's and Rudenko's testimony that appellant's breath smelled like alcohol, and that appellant's eyes appeared glassy and his eyelids appeared droopy, (2) appellant's admission that he would fail a breath alcohol test, (3) appellant's performance on field sobriety tests indicating that he was intoxicated, (4) Officer Rudenko's opinion testimony that appellant had lost the use of his mental and physical faculties, (5) the bottle of alcohol found in appellant's car, and (5) evidence that appellant was speeding and failed to apply his brakes before hitting Bundrant's motorcycle.

This evidence is similar to the evidence we held was sufficient to establish intoxication in *Henderson*. In that case, the evidence included (1) witnesses reporting the defendant smelled of alcohol, (2) the defendant admitted to a paramedic that he "had been drinking, but refused to divulge how much," (3)

16

witnesses testified that defendant's speech was slurred and opined that he was intoxicated, (4) witnesses testified to defendant "speeding and driving erratically immediately before the incident," and (5) the defendant's blood serum test performed four and one half hours after the incident at issue revealed the equivalent of .146 blood alcohol content. *Henderson*, 29 S.W.3d at 622–23; *see also Adams v. State*, 156 S.W.3d 152, 156 (Tex. App.—Beaumont 2005, no pet.) (evidence that defendant "was speeding, had alcohol on his breath, exhibited all six clues on the on the HGN test, four clues out of eight on the walk-and-turn test, and one clue on the one-leg stand test," as well as "intoxication levels of .09 and .094" reflected on tests administered fifty-four minutes after the traffic stop was sufficient to establish intoxication); *Holt v. State*, 195 S.W.3d 795, 796–97 (Tex. App.—Amarillo 2006, no pet.) (police officer's opinion that defendant was legally intoxicated, coupled with evidence that defendant inadequately performed on field sobriety test, smelled of alcohol, had containers of alcohol in vehicle, and had been driving erratically was sufficient to establish intoxication).

In addition to specially challenging the sufficiency of the intoxication evidence, appellant generally challenges the sufficiency of the evidence as to all the other elements of intoxicated assault and felony DWI. As for intoxicated assault, he argues that "even in the light most favorable to the verdict, a rational jury could not conclude that this evidence is such as to permit it to find beyond a

17

reasonable doubt that [1] Appellant did then and there operate a motor vehicle [2] in a public place [3] while intoxicated, and [4] did my reason of such intoxication [5] cause serious bodily injury to Charles Bundrant, [6] by causing said motor vehicle to collide with a vehicle occupied by Charles Bundrant." We disagree and hold that there is sufficient evidence of each additional element of intoxication assault.

Appellant necessarily admitted to "operating a motor vehicle" and "causing said motor vehicle to collide" with Bundrant's vehicle by acknowledging that he was the person who ran into Bundrant's motorcycle. The accident—which occurred on Highway 288—was in a "public place," as defined in the jury charge as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, and highways." Budrant's injuries were caused by the collision with appellant's car, and the seriousness of the injuries, from which Budrant died from four days after the accident, were testified to extensively by both his treating physician and the medical examiner. Given the evidence that appellant was speeding and failed to brake before hitting Budrant's motorcycle—which was travelling in a straight line in front of appellant's car in the same lane as appellant before the collision—we conclude that a rational trier of fact could have found the requisite causal link between appellant's "loss of normal use of mental or physical faculties by reason of the introduction of alcohol" and the

18

collision causing serious bodily injury. *Kuciemba v. State*, 310 S.W.3d 460, 463 (Tex. Crim. App. 2010) ("[A] driver's failure to brake also provides some evidence that the accident was caused by intoxication."); *Damon v. State*, No. 01-09-01074-CR, 2011 WL 2112807, at *12 (Tex. App.—Houston [1st Dist.] May 26, 2011, no pet.) (mem. op., not designated for publication) (evidence that defendant was speeding, ignored a stop sign, and failed to brake or take other evasive action was legally sufficient to support finding that defendant's driving while intoxicated caused death).

Challenging his felony DWI conviction, appellant argues "a rational jury could not conclude that the evidence is such as to permit it to find beyond a reasonable doubt that Appellant did then [1] operate a motor vehicle [2] in a public place in Brazoria County, Texas: to wit: a public roadway, [3] while intoxicated." We disagree. We have previously concluded that there is sufficient evidence of appellant's intoxication, and that he was operating his vehicle on a public roadway. Appellant stipulated at trial to the having two prior DWI convictions for purposes of enhancement to a felony.

Having concluded that appellant's convictions for intoxicated assault and felony driving while intoxicated are supported by sufficient evidence, we overrule appellant's second point of error.

## CONCLUSION

We affirm the trial court's judgments.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).