In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00175-CR**

_____

**JOHNNIE EDISON CARTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 15-22215**

**MEMORANDUM OPINION**

Appellant, Johnnie Edison Carter,[1] appealed the trial court's order revoking

his deferred adjudication probation. In his appeal, he alleges multiple violations of

his constitutional rights, particularly the privilege against self-incrimination and the

---

[1] The record reflects that Johnnie Edison Carter is also known as Johnnie
Edison Carter Jr.

1

right to confront witnesses against him. U.S. Const. amends. V, VI, and XIV. Finding no reversible error, we affirm the judgment of the trial court.

## Background

### A. Procedural History

In 2015, Appellant entered into a plea bargain agreement regarding a charge of aggravated assault with a deadly weapon, a second-degree felony. *See* Tex. Penal Code Ann. § 22.02(a)(2). Pursuant to the terms of that plea agreement, Appellant was placed on deferred adjudication for ten years, and was ordered to obey certain conditions: pay certain fines and fees, regularly report to his Community Supervision Officer, perform community service, complete an anger management program, and commit no offense against the laws of this or any other state.[2] In 2018, it came to the attention of the State that Appellant had not met his obligation as to four of his conditions of unadjudicated probation, and the State moved to revoke Appellant's probation on those grounds. The State later amended its motion to include two additional grounds related to criminal charges of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(1)(B).

Appellant pleaded "true" to revocation grounds alleging that he had failed to pay fees, to report to his probation officer, and had failed to provide verification of

---

[2] Appellant's Deferred Adjudication Order included twenty-six conditions, but only the five listed conditions are relevant to this appeal.

his community service, but he pleaded "untrue" to the grounds alleging that he had committed another criminal offense. The trial court found sufficient evidence of four violations of the conditions of his probation to support revocation of his probation, including the new criminal charges, and sentenced Appellant to a term of twenty years in the Texas Department of Criminal Justice, Institutional Division. In his appeal, Appellant asserts multiple violations of his constitutional rights during the trial court proceedings. He also attacks the fees assessed, noting that one fee was declared unconstitutional and amendments to Texas law that affect others.

## B. Hearing on the Motion to Adjudicate

### 1. Testimony of Tina Vaughn[3]

Tina, the alleged victim of the new criminal charges brought against Appellant, testified that at the time of the alleged assaults, in late December of 2017, she was thirteen years old, and Appellant was her mother's boyfriend. She stated that she and Appellant were at her mother's home while her mother was at work, and the two of them watched a movie while lying on her mother's bed. Appellant later asked her explicit questions about her sexual experience and preferences and

---

[3] Because the Texas constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[,]" we use a fictitious name to identify the individual identified in the record as the victim of the alleged crime. *See* Tex. Const. art. I, § 30(a)(1).

3

took her on a trip to a store. When they returned from that trip, Appellant told Tina to put on a dress, and she complied with his directive. Appellant then had Tina perform oral sex on him, and she recalled that he ejaculated in her mouth and on the dress she was wearing. Tina then went into the bathroom intending to shower, but when she exited the bathroom to look for her phone, Appellant asked her to come back and then had vaginal intercourse with her.

When Tina returned to her father's home, she told him that Appellant had assaulted her, and her father took her to the hospital for a sexual assault examination. Tina then gave an interview at the Garth House, where she related the same information that she provided in court. She also confirmed the information that she had provided to the sexual assault nurse examiner. Tina's testimony at the hearing was consistent with that information.

Tina acknowledged having engaged in unprotected sexual intercourse with a male acquaintance within a short time of Appellant's assault of her. She also confirmed her mental health struggles, including suicide attempts, but stated that she has received counseling and has improved because of that counseling.

Appellant lodged no objections to Tina's testimony.

4

### 2. Testimony of Appellant

Appellant confirmed that he was dating Tina's mother in December of 2017. For that reason, Appellant was acquainted with Tina but did not know her well because she was living with her father during that time frame. He denied the allegations regarding his alleged sexual contact with Tina but was unable to explain why his semen was found on the front of Tina's dress. He did, however, indicate that the house was messy, and that clothes were everywhere, including in the bedroom where he and Tina's mother shared a bed.

### 3. Testimony of Rachel Thomas

Thomas, a sexual assault nurse examiner ("SANE"), testified as to her educational and professional qualifications and certifications. She described the purpose of a SANE examination, noting that its primary purpose is to provide medical treatment for the patient.

Thomas outlined the procedure for conducting a SANE examination, both generally and with specific reference to the SANE examination she performed on Tina in December of 2017. She confirmed the history of the assault that Tina gave at the time of the examination and noted that although Tina showed no signs of having sustained a physical injury due to that assault, the absence of injury is common.

Because Thomas testified before Tina testified, Appellant objected to Thomas' testimony to the extent that it might include hearsay statements of Tina that would violate Appellant's constitutional right to confront a witness against him. The trial court overruled the objection.

### 4. Testimony of Jessica Lake

Lake was a forensic scientist employed at the Texas Department of Public Safety Crime Laboratory in Houston. She described her own educational and professional qualifications, as well as the accreditation of the laboratory.

She outlined the process of DNA testing, noting that samples are identified with a unique case number and a bar code that is scanned to track the evidence movement within the laboratory and maintain the integrity of its chain of custody. As an additional security measure, the laboratory keeps evidence in a vault that must be accessed by two employees, each with a unique identification number.

Lake authenticated the relevant items of evidence and stated that she prepared samples for DNA testing. She identified item 2.1C as the fabric sample cut from the front of Tina's dress.

Appellant objected to the admission of Lake's report on the basis that it was hearsay, which the trial court overruled.

### 5. Testimony of Monnie Michalic

Like Lake, Michalic was employed as a forensic scientist at the crime laboratory at the time of the scientific analyses in question in this case. She described her educational and professional qualifications and expressed her agreement with Lake's testimony about DNA. Her involvement in this case consisted of examining and comparing the computer-generated profiles and writing a report; she did not, however, perform any part of the laboratory procedure that produced the DNA profiles. Michalic concluded that item 2.1C contained epithelial (skin) DNA from Tina, from Appellant, and from an unknown individual, and contained sperm DNA from Appellant and an unknown individual. She stated that there was only an infinitesimal chance that Appellant did not contribute to the DNA mixture identified on this item of evidence but acknowledged the possibility that evidence tested for DNA might contain some leftover skin cells from another individual.

Appellant objected to Michalic's report on the basis that it was hearsay, and the trial court overruled his objection.

### 6. Testimony of Charles Duchamp

Detective Duchamp, of the Beaumont Police Department, described the usual procedure for investigating a report of child sexual abuse. In connection with his assignment to investigate Tina's reported assault, he interviewed Appellant, who denied having assaulted Tina in any manner.

Duchamp did not read Appellant his rights before questioning him but stated that he was not required to do so because Appellant was not in custody at the time of the interview. Duchamp recalled that Appellant voluntarily came to the police station, gave a statement, and left the station afterward.

Appellant objected to Duchamp's testimony based on § 38.22 of the Texas Code of Criminal Procedure, the implication being that Appellant was not warned of his privilege against self-incrimination before being subjected to allegedly custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22. Appellant further objected to the line of questioning inquiring into the logic of Appellant's semen being found on Tina's dress if, as Appellant alleged, he never touched her, and the trial court overruled his objection.

### 7. Testimony of Ashley Barlow

Appellant's probation officer testified regarding Appellant's payment arrearages and his failure to report to the probation department according to his assigned schedule. In addition, Barlow noted that as of the time of the hearing, Appellant had completed only 142 of the 800 hours of community service required of him.

### Standard of Review

"[T]o revoke probation (whether it be regular probation or deferred adjudication), the State need prove the violation of a condition of probation only by

8

a preponderance of the evidence." *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013). In the context of probation revocation, "'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Id.* at 865. To decide whether the State met this evidentiary standard, we examine the evidence in the light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

In determining whether the allegations in the motion to revoke probation are true, the trial court is the sole trier of fact, the judge of the credibility of the witnesses, and the arbiter of the weight to be given to the testimony. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.). It is within the province of the trial court, as factfinder, to reconcile conflicts or contradictions in the evidence, and we do not reverse the trial court if the conviction finds support in the evidence. *See Cooks v. State*, 844 S.W.2d 697, 708 (Tex. Crim. App. 1992); *Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The State needs to establish only one sufficient ground for revocation by a preponderance of the evidence. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).

**Analysis**

## A. Privilege Against Self-Incrimination

In his first and third issues, Appellant complains that a police officer questioned him without advising him of his constitutional rights, and that this questioning therefore violated his privilege against self-incrimination. *Miranda,* 384 U.S. 436; Tex. Code Crim. Proc. Ann. art. 38.22. Although Appellant concedes that these warnings are required only when an accused person is in custody, he argues that his interview should be considered custodial interrogation because it took place in a police station and because Appellant was the target of the investigation into Tina's allegations of sexual assault. Appellant has not, however, cited any controlling authority to support his interpretation of the law and its application to the facts before us. Tex. R. App. P. 38.1(i). To the contrary, both Texas and federal courts have extensively examined the question of custody for *Miranda* purposes, and have determined that a suspect is not in custody simply because the questioning occurs in a police station. *Oregon v. Mathiason,* 429 U.S. 492 (1977); *see also Meek v. State,* 790 S.W.2d 618, 622 (Tex. Crim. App. 1990) (questioning took place at a fire station). The fact that an individual may be the prime suspect in a case is likewise irrelevant to the application of *Miranda* because officers' subjective opinions have no bearing on the custody question. *Stansbury v. California*, 511 U.S. 318, 324 (1994). Instead, the "relevant inquiry is how a reasonable [individual] in the

suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

In the case at bar, Detective Duchamp testified that at the start of the interview, he personally advised Appellant that he (Appellant) was free to leave at any time, and that when the interview ended, Appellant left the police station. Appellant has offered no evidence to contradict Duchamp's characterization of the interview as non-custodial; moreover, Appellant's brief states that Duchamp "*invited* Appellant into his office[.]" (emphasis added) Calling Duchamp's action an invitation underscores the non-custodial nature of the interview. The evidence contains no indication that Appellant was handcuffed or that his "freedom of action [was] curtailed to a 'degree associated with formal arrest[,]'" and we therefore conclude that a reasonable person in Appellant's situation would *not* have understood himself to have been in police custody at the time he provided his statement. *Berkemer,* 468 U.S. at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam).

Even if Appellant were in custody at the time in question, the trial court's error, if any, in allowing Duchamp's testimony would be harmless, because "very similar evidence was admitted without objection." *Bleimeyer v. State*, 616 S.W.3d 234, 256 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citations omitted). Not only did Tina testify to the matters that Duchamp related, but Appellant testified in conformity with Duchamp's version of Appellant's un-Mirandized interview.

11

Because Appellant failed to object to that very similar evidence, the trial court did not commit reversible error in permitting Duchamp's testimony.

Appellant's *Miranda* issues are overruled.

## B. Right to Confront Witnesses

Appellant's second, fourth, fifth, and sixth issues address the alleged deprivation of his constitutional right to confront the witnesses against him. In particular, he claims that the trial court allowing the testimony of Duchamp and Thomas violated this right because their testimony contained Tina's hearsay testimonial statements, in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). In making this argument, however, Appellant has overlooked the fact that Tina testified to the same events that Duchamp and Thomas related. Because Tina's testimony was admitted without objection, and because it was "very similar" to the arguably objectionable portions of Duchamp's and Thomas' testimony, any error in the admission of their testimony is harmless. *Bleimeyer,* 616 S.W.3d 234 at 256.

Appellant also claimed that the admission of the laboratory report was erroneous because it was hearsay, and because not all the laboratory technicians contributing to it were available for cross-examination. At the hearing on the Motion to Revoke Appellant's Probation, Appellant objected to the laboratory report on the sole ground that it was hearsay but did not further object to the report on the ground that it violated his right to confront witnesses. Because a hearsay objection fails to

12

preserve error regarding the Confrontation Clause, and because a hearsay objection, without additional specificity, "is insufficient to apprise the trial judge of a defendant's specific complaint[,]" we overrule this issue. *See Williams v. State*, No. 05-06-00797-CR, 2007 WL 914754, at *2 (Tex. App.——Dallas March 28, 2007, no pet.); Tex. R. App. P. 33.1(a)(1).

We further observe that Appellant did not object to Lake's or Michalic's testimony, only their laboratory reports. The laboratory reports appear to duplicate their testimony, and the trial court therefore did not err in admitting the reports. *Bleimeyer,* 616 S.W.3d 234 at 253.

Accordingly, we overrule Appellant's Confrontation Clause issues.

## C.  Legally Insufficient Evidence

Probation revocation allegations five and six reference Appellant's sexual contact with Tina; Appellant attacks the sufficiency of the evidence to sustain these grounds on the basis that the scientific evidence is legally inadequate to identify him, and on the additional basis that Tina's testimony was fabricated. In a legal sufficiency review, we evaluate the evidence in the light most favorable to the trial court's decision and will reverse the trial court only if no rational trier of fact could have reached the same conclusion. *Williams,* 2007 WL 914754, at *3 (citations omitted).

13

As for the identification of Appellant, Duchamp testified that he obtained a sample of Appellant's DNA and submitted it to the laboratory for testing. Lake and Michalic also testified that their laboratory uses a unique case number and bar code to identify evidence being tested, and that a sample of Appellant's DNA was provided for the purpose of testing it against DNA found on items of evidence. Michalic further noted that although it was scientifically possible that the evidence contained Appellant's DNA from his epithelial cells only, and not from his semen, that outcome was statistically improbable. Taken together, the testimony of Duchamp, Lake, and Michalic would enable a rational factfinder to conclude by a preponderance of the evidence that Appellant's semen was found on the evidence tested, a cutting from the fabric of Tina's dress. Additionally, Appellant's new contention disputing the reliability of scientific testing methods was never presented to the trial court, and this complaint therefore has not been preserved for our review. Tex. R. App. P. 33.1(a)(1).

Finding legally sufficient evidence to support the trial court's decision to revoke Appellant's probation, we overrule this issue.

**D. Appellant's 2015 Guilty Plea**

In his seventh and eighth points, Appellant attacks the trial court's disposition of the offense of aggravated assault. Even though Appellant previously entered a plea of "guilty" to that crime, Appellant now appears to be arguing that he had a

14

valid defense to the charge of aggravated assault, and that his attorney failed to properly investigate evidence that might have substantiated his current claim of self-defense. This argument was not presented to the trial court and may not be presented for the first time on appeal. Tex. R. App. 33.1(a)(1). We therefore overrule these issues.

**E. Written Findings of Fact**

In his ninth appellate issue, Appellant contends that this case should be remanded to the trial court for resentencing, or to direct the trial court to make written findings of fact regarding both the aggravated assault and the grounds for revoking probation. Appellant further contends that the trial court erred in determining that his "small pocket knife" was a deadly weapon. These complaints were not presented to the trial court, and they therefore are not preserved for our review. Tex. R. App. P. 33.1(a)(1).

In addition, Appellant has not shown that the trial court's alleged error, if any, was harmful to the outcome of his case, and therefore has not shown that reversal is appropriate. *Van Do v. State*, 634 S.W.3d 883, 899 (Tex. Crim. App. 2021). Instead, Appellant has offered a narrative that purports to substantiate his position and has urged us to accept it as accurate. It was, however, the exclusive province of the trial court to determine the facts, as shown by the exhibits and witness testimony; in conformity with its responsibility as factfinder, the trial court found the relevant facts

adverse to Appellant, and we will not disturb those determinations absent an abuse of discretion. *Taylor,* 604 S.W.3d at 179. Finding no abuse of discretion, we overrule this issue.

## F. Fee Assessments

In his tenth and final point, Appellant requests a refund in the amount of $77.07 of certain fees charged, alleging that these fees are unconstitutional, and that subsequent changes in Texas law would have resulted in lower fees being assessed against him. Like many of Appellant's preceding arguments, this argument was never presented to the trial court, and Appellant therefore has waived his right to present it on appeal. Tex. R. App. P. 33.1(a)(1). Appellant's reliance on *Bearden v. Georgia* is misplaced, as that case does not indicate that indigent defendants will not be found to have waived their complaints of constitutional or other error. 461 U.S. 660 (1983). Instead, *Bearden* addresses the propriety of imprisoning an indigent individual who is unable to pay a lawful fine yet is silent as to the necessity of preserving error as a prerequisite to appeal. *See generally id*. *Montalbo v. State* is likewise inapplicable to Appellant's claim that he has not waived error. 885 S.W.2d 160 (Tex. Crim. App. 1994). *Montalbo,* unlike the case before us, addresses the sufficiency of a notice of appeal; as neither party to this appeal has called upon us to consider the sufficiency of Appellant's notice, we will not do so. *See generally id*.

16

Although Appellant has raised a seemingly legitimate claim to partial reimbursement under the rationale of *Salinas v. State*, Appellant failed to present this claim to the trial court, and he therefore has waived his right to argue it on appeal. 523 S.W.3d 103 (Tex. Crim. App. 2017); Tex. R. Civ. P. 33.1. Because an argument of constitutional magnitude may by waived by failure to timely present it, we overrule this issue. *Beaty v. State*, No. 03-16-00669-CR, 2017 WL 2928113, at *2 (Tex. App.—Austin, July 7, 2017, no pet.) (mem. op., not designated for publication).

## Conclusion

As noted above, Appellant pleaded "true" to two of the pleaded grounds to revoke his probation. Because a plea of "true" to any single ground will support a decision to revoke probation, the trial court did not err in revoking Appellant's probation, finding him guilty of aggravated assault, and sentencing him to a twenty-year prison term. *Ross v. State*, 523 S.W.2d 402, 403-04 (Tex. Crim. App. 1975).

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

17

Submitted on January 31, 2022
Opinion Delivered June 8, 2022
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.